**James D. CUNNINGHAM, Fred M. Lutgen, Jr. and Ross Haller, Appellants (Plaintiffs),**

v.

**Doug HILES, Al Gomez, Jr., Arthur C. and Sarah Clouser, Town of Schererville Plan Commission and Town of Schererville, Indiana, a municipal corporation, Appellees (Defendants).**

No. 3–977A234.

Court of Appeals of Indiana, Third District.

Oct. 24, 1979.

---

1. Vacating *Andert v. Fuchs* (1978), Ind.App., 381 N.E.2d 1081.

William J. Muha, Daniel G. Hoebeke, Highland, for appellants.

Gilbert F. Blackmun, and Leonard M. Holajter, Friedrich, Bomberger, Tweedle and Blackmun, Highland, Kenneth D. Reed, Abrahamson, Reed and Tanasijevich, Hammond, for appellees.

STATON, Judge.

James D. Cunningham, Fred M. Lutgen, Jr., and Ross Haller, whom we shall hereinafter refer to as "Homeowners", resided in Lincoln Knolls Estates, a subdivision[1] of Schererville, Indiana. They filed an action against the various named defendants in an attempt to preclude the possibility that the wholly residential character of their subdivision would be compromised by the establishment of a commercial enterprise. Since the inception of Lincoln Knolls Estates in 1953, a covenant has restricted the development of lots to residential use.

In July of 1976, the Schererville Plan Commission voted to recommend to the Schererville Board of Trustees that the zoning classification of a particular tract within Lincoln Knolls Estates be changed from residential to commercial usage. The recommendation was subsequently adopted by the Board of Trustees. Homeowners challenged the propriety of that re-classification

---

1. We use the word "subdivision" herein in its common sense; Lincoln Knolls Estates has not been legally subdivided and so recorded with the Town of Schererville.

in the trial court on the basis that the Plan Commission had violated due process and equal protection guarantees of Homeowners.

A related but legally distinct claim provided the basis for Homeowners' suit against individual defendants Doug Hiles, Al Gomez, Jr., and Arthur and Sarah Clouser. In April of 1976, the Clousers, who own various tracts of land in Lincoln Knolls Estates, entered into a contract with Doug Hiles for the sale of one of their lots within the subdivision. The sale was made conditional upon whether the zoning classification of the property would be changed from residential to commercial use. Following the Trustees' zoning re-classification of the property in July of 1976, Hiles employed Al Gomez, Jr. as general contractor to direct the construction of a music store on the purchased lot in Lincoln Knolls Estates. Homeowners filed suit against the Clousers, Hiles, and Gomez to permanently enjoin the construction of the proposed music store on the basis that the use of land in Lincoln Knolls Estate was restricted by covenant to residential purposes.

Homeowners' related claims against the various defendants were tried without the intervention of a jury. Following the presentation of evidence and arguments of counsel, the trial court entered judgment for both the named individual defendants and the Town of Schererville and its Plan Commission. Homeowners here appeal from those decisions, and raises the following issue for our review:

(1) Whether the evidence supports the conclusion of the trial court that the restrictive covenant limiting the use of land within the subdivision to residential purposes was not enforceable?

We reverse the trial court's determination that the restrictive covenant was unenforceable.[2]

Homeowners contend that the evidence was insufficient to support the trial court's conclusion that the covenant restricting the use of the subject tract to residential purposes was unenforceable. At the outset, we note that individual defendants Hiles, Gomez, and the Clousers maintain that Homeowners have waived their right to raise this question on appeal because the issue was not raised in Homeowners' motion to correct errors.

While the presentation of issues in Homeowners' motion to correct errors is not a model of organization, we feel the allegations of error asserted therein satisfied the purpose of Ind.Rules of Procedure, Trial Rule 59. The purpose of TR. 59 is to apprise the trial court of a party's allegations of error in order to enable the trial court to rectify the error. *Johnson v. State* (1975), Ind.App., 338 N.E.2d 680, 682. Homeowners' motion to correct errors explicitly tendered the following related allegations:

(1) Whether the trial court applied the proper standard by which to evaluate whether the evidence justified a finding that the restrictive covenant was unenforceable?

(2) Whether the individual defendants had presented evidence sufficient to satisfy their burden of proof to show that the restrictive covenant was not enforceable?

In order to adjudicate these allegations, the court was necessarily required to determine whether the evidence was sufficient to support its decision that the restrictive covenant was not enforceable. The motion to correct errors alleged that the court had applied an incorrect standard of review in evaluating the evidence to determine whether the covenant was enforceable, that the defendants had the burden of proof to show that the correct standard was satisfied, and that the defendants had not carried this burden. The issue as framed

---

2. Since we find the restrictive covenant to be enforceable, we do not address other issues raised by Homeowners with respect to the trial court's finding that the covenant was unenforceable. Nor is it necessary for this Court to address Homeowners' contention that inade-

quate notice was provided to them prior to the meeting of the Schererville Board of Trustees. The zoning re-classification of Hiles' property is of no effect in view of our decision that the restrictive covenant was enforceable.

on appeal represents nothing more than an amalgamation of these contentions. Consequently, we find that Homeowners have not waived their right to challenge the sufficiency of the evidence on appeal. We turn our attention to the substance of Homeowners' claim, consistent with the long-standing appellate preference to decide issues on their merits. *West v. Indiana Insurance Co.* (1969), 253 Ind. 1, 11, 247 N.E.2d 90, 97.

■ In the context of property law, the term "restrictive covenant" describes a contract between a grantor and grantee which restricts the grantee's use and occupancy of land. *Bob Layne Contractor, Inc. v. Buennagel* (1973), 158 Ind.App. 43, 53, 301 N.E.2d 671, 678. Generally, the purpose behind restrictive covenants is to maintain or enhance the value of lands adjacent to one another by controlling the nature and use of surrounding lands. *Id.* Here, since 1953 the restrictive covenant had been a part of contracts for the sale of tracts within Lincoln Knolls Estates and had restricted the use of lots within the subdivision to residential purposes. The covenant has served to maintain the residential character of life in Lincoln Knolls Estates and to preserve the value of the lots and homes in the residential market. Homeowners have invoked the restrictive covenant to block the proposed construction of a commercial use, a music store.

■ Although restrictive covenants are not favored by the law, the contractual nature of the restrictions contained in such covenants has compelled courts to enforce them in equity so long as the restrictions are unambiguous and do not violate public policy. *Id.* Public policy demands that restrictive covenants be invalidated when the changes are so radical in nature that the original purpose of the covenant has been defeated. *Id.* Our determination here thus hinges on whether changes within Lincoln Knolls Estates and the area surrounding it subsequent to 1953 are so radical in nature that the purpose of the covenant—to maintain the residential character of the subdivision—is no longer feasible.

The evidence regarding changes *within* Lincoln Knolls Estates since 1953 includes the following. In 1974, Western and Southern Insurance Company constructed an office building which protrudes approximately 112.50 feet into the subdivision at its northeast corner. Employees of Southern and Western must momentarily use a subdivision street at the northeast corner of Lincoln Knolls Estates in order to reach the parking lot for that building. Our search of the record reveals that the only other change since 1953 for our consideration here is the zoning reclassification which was granted Southern and Western Insurance Company in 1973 for the then-proposed construction of the office building.

■ According to the Town of Schererville's "Zoning Ordinance No. 490," which established comprehensive zoning regulations for the town and delineated procedures for the administration and enforcement of the regulations, the ordinance does not "abrogate any easement, *covenant,* or any other private agreement." Zoning and Use Regulations Ordinance, Town of Schererville, Indiana, No. 490 § 3(C), p. 1 (1969). Therefore, we conclude that the zoning change is of no consequence to our determination as to whether changes in conditions within Lincoln Knolls Estates have defeated the purpose of the restrictive covenant. *Capp v. Lindenberg* (1961), 242 Ind. 423, 433, 178 N.E.2d 736, 740. *Cf. Bob Layne Contractor, Inc. v. Buennagel, supra,* at 678.

In the area surrounding Lincoln Knolls Estates, several changes have occurred since 1953 which bear on our consideration here. Adjacent to the Western and Southern office building, a bank has replaced the gas station which, prior to 1953, had occupied the lot adjacent to the northeast perimeter of the subdivision. The record also reveals that a gas station was built across the highway from the northeast corner of the subdivision, that approximately one mile away on U.S. 30 various businesses had located, and that roughly two miles away a lumber company had located next to U.S. 30. Testimony also established that the amount of traffic on U.S. 30, which forms the northern border of the subdivision, had increased eight to ten times that which existed in 1953.

■ We note that the question whether changes in the area surrounding a residentially restricted subdivision affects the restrictive covenant has not been previously considered in this jurisdiction. Our search of Indiana case law does reveal, however, this general rule by which courts have been guided in their determinations of the enforceability of restrictive covenants:

" 'No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement. * * * ' "

*Bachman v. Colpaert Realty Corp.* (1935), 101 Ind.App. 306, 319–320, 194 N.E. 783, 789, *quoting Rombauer v. Compton Heights Christian Church* (1931), 328 Mo. 1, 40 S.W.2d 545, 553. In Indiana, the enforceability of a restrictive covenant is to be determined on a case by case basis; we therefore decline to follow those jurisdictions which have held that changes in the area surrounding an area protected by a restrictive covenant cannot ever affect the enforceability of the covenant. 20 *Am. Jur.2d Covenants, Conditions, and Restrictions* § 284 (1965). *See, e. g., Morgan v. Matheson* (1961), 362 Mich. 535, 107 N.W.2d 825, 828. Rather, we conclude that changes in an area surrounding an area protected by a restrictive covenant should be considered in the determination of the covenant's enforceability when these changes have significantly affected the residential character of the subdivision. *Accord, Deitch v. Bier* (1975), 460 Pa. 394, 333 A.2d 784, 785. At the same time, we conclude that the weight attributed to these changes should not be as great as that accorded changes which have occurred within the restricted area. *Hecht v. Stephens* (1970), 204 Kan. 559, 464 P.2d 258, 262.

3. We point out that once it is shown that a valid covenant restricts the use of property to residential purposes, the party against whom enforcement of the covenant is sought bears the burden of showing that enforcement of the covenant would violate public policy. *Exchange Nat. Bank of Chicago v. City of Des*

■ It is necessary to examine each of the changes in the area surrounding Lincoln Knolls Estates, and their affect upon the residential character of Lincoln Knolls Estates. First, the record does not reveal that the change in occupancy of the lot adjacent to the northeast corner of Lincoln Knolls Estates—from service station to bank—has had a negative impact on the residential character of the subdivision.[3] The record shows that the only adverse impact of the presence of the service station across the highway from the subdivision, as well as the various business establishments located adjacent to U.S. 30 a mile or more from the subdivision, has been to increase traffic on U.S. 30, the divided highway which constitutes the northern border of Lincoln Knolls Estates. Finally, the record indicates that the increase of traffic on U.S. 30 to approximately eight to ten times that which existed in 1953 has had an impact on the residential character of the subdivision. According to testimony, vacant lots of Lincoln Knolls Estates which border U.S. 30 no longer attract residential buyers due to the proximity of those tracts to the traffic load.

Based on our examination of the record, we conclude that two changes have occurred within and around Lincoln Knolls Estates since 1953 which are significant to the enforceability of the restrictive covenant: (1) The construction of the Western and Southern Insurance Company office building has led to increased traffic within one corner of the subdivision; and, (2) The general urban development of the Schererville area has led to a dramatic increase in the amount of traffic on U.S. 30, which forms the northern border of the subdivision. As previously noted, greater weight must be accorded to changes within the protected area.

■ We conclude that the momentary presence of employees of Western and

*Plaines* (1975), 32 Ill.App.3d 722, 336 N.E.2d 8, 16. This burden is not satisfied merely by proving that particular changes have occurred; rather, it also requires the party to show how the changes have adversely affected the purpose of the covenant.

Southern Insurance Company trafficking to and from the office building has not significantly affected the residential character of the subdivision. That traffic is restricted to the perimeter of one corner of the subdivision, which, in its entirety, encompasses sixty acres. Testimony established that, excepting the corner thoroughfare used by Western and Southern employees, the streets throughout the subdivision are used by pedestrians and as a playground by children. While the increase of traffic on U.S. 30 has unfortunately diminished the residential value of some adjacent subdivision tracts, there is no evidence to indicate that the increased traffic load has affected the residential nature of life *within* Lincoln Knolls Estates. Consequently, the evidence presented does not reveal that the changes which have occurred within and around the subdivision are so radical in nature that the purpose of the restrictive covenant has been defeated.

The trial court thus erred when it found that the covenant was unenforceable. The cause is remanded to the trial court with instructions to grant Homeowners' prayer for a permanent injunction against the proposed construction of the music store.

GARRARD, P. J., and HOFFMAN, J., concur.