Robert RASP and Linda Rasp, et al., Appellants (Defendants Below),

v.

HIDDEN VALLEY LAKE, INC., Appellee (Plaintiff Below).

No. 15A04-8702-CV-53.

Court of Appeals of Indiana, Fourth District.

Feb. 10, 1988.

Rehearing Denied March 8, 1988.

Robert J. Ewbank, Ewbank & Kramer, Lawrenceburg, Stan B. Hirsch, Haymaker, Hirsch & Fink, Indianapolis, for appellants.

James R. Fisher, James L. Petersen, Michael J. Lewinski, Ice Miller Donadio & Ryan, Indianapolis, William R. Pfster, Bielby & Pfister, Lawrenceburg, for appellee.

CONOVER, Judge.

Defendants–Appellants Robert and Linda Rasp (Rasps) appeal the Dearborn County Court's judgment of $660.83 and court costs in favor of Hidden Valley Lake, Inc. (HVL Developer) representing unpaid sewer and water "availability" fees and late charges owing to HVL Developer. Because of identical fact situations, six other cases have been consolidated in this appeal.

Reversed.

Because we reverse we find it necessary only to address three issues raised by Appellants:

1. whether availability fees are void as against public policy,

2. whether a covenant providing for the payment of water and sewer availability fees by lot owners in a subdivision who do not connect to such utilities is a covenant which binds them and runs with the land, and

3. whether they, as covenantees, must pay such availability fees to the covenantor, the original developer of the subdivision who installed the water and sewer lines so as to make them available to the subdivision's lots, where the developer has transferred all his right, title and interest in and to those lines and their accoutrements to two public utility corporations wholly-owned by developer.

The Rasps are owners of two lots in Hidden Valley Lake subdivision located in Dearborn County. The Rasps' deed recited a covenant HVL Developer had spread of record in 1972 wherein the grantees promised to pay to HVL Developer, "its successors or assigns," yearly fees of $60 and $36 respectively for water and sewer service availability. The covenant also provided for a $395 fee to install a sewer service connection and a $195 charge to install a water service connection at the grantees' lot line. The Rasps have not connected to the water and sewer lines available to their lots.

HVL Services, Inc. and HVL Utilities, Inc. are the public utilities which furnish sewer and water service to the subdivision. Both are wholly-owned subsidiaries of HVL Developer and subject to regulation by the Public Service Commission of Indiana. HVL Developer, however, is not a public utility. Although the water and sewer lines were initially installed by HVL Developer, at some unspecified time it transferred the sewer and water lines to its successors, the two utility companies.

Both utilities operate at a loss, but HVL Developer voluntarily makes up any defi-

cits the utilities suffer out of the "availability" funds it collects from non-connected lot owners under the covenant at issue. However, it is under no statutory or contractual compulsion to so act.

The paragraph providing for payment of "availability" fees reads in pertinent part:

9. Grantee for himself, his heirs, executors, or assigns, agrees that as a consideration of sale, and as a condition precedent to the installation of water and sewer mains adjacent to the lots as herein described, which said mains are to be located by Hidden Valley Lake, Inc., its successors, or assigns, that the Grantee(s) jointly and severally promise to pay to the Grantors or its assigns a minimum of $5.00 per month water and $3.00 per month sewer, payable annually in advance, so long as water and/or sewer service is available. Payment thereof for the year or part thereof shall be due on the first day of the month immediately following the availability of water and/or sewer service to Grantee, his heirs, executors, or assigns, whether or not an actual water and/or sewer service connection is then in existence to said Grantee, his heirs, executors, or assigns, for the period beginning with said month and ending on March 31st subsequent thereto, and thereafter due and payable in the amount of $60.00 for water service in advance on the first day of April of each year, and $36.00 per year sewer service. The foregoing charges are for the availability of water and/or sewer service and is not a contribution in aid of construction. The Grantor, its successors or assigns, upon receiving a written request and $195.00 will install a water service connection from the main to the Grantee's lot line, and thereafter Grantee, his heirs, executors, or assigns shall pay a minimum water service fee, whether or not used, or $5.00 per month in lieu of and in the same manner as the water availability charge.[1]

The Grantor, its successors or assigns, upon receiving a written request and $395.00 will install a sewer service connection from the main to the Grantee's lot line, and thereafter Grantee, his heirs, executors, or assigns shall pay a minimum sewer service fee, whether or not used, of $3.00 per month; in lieu of and in the same manner as the sewer availability charge.

Provided however, no charge for sewer service to any lot shall be made prior to the time water service is available to said lot.

The aforesaid charges are subject to change by the Public Service Commission of Indiana....

Charges for water and/or sewer service and for the availability of water and/or sewer service ... if unpaid, shall constitute a lien encumbrance on or against said lot, tract, or parcel of lands,....

In the event any order, now existing or hereafter made, by any Governmental agency having jurisdiction conflicts with any of the aforesaid provisions and/or charges, then said charges and provisions shall be deemed modified to conform to the maximum charges permitted by such order.

The parties agree water and sewer lines have been available to the Rasps' lots since their purchase.

HVL Developer sued the Rasps to recover delinquent availability fees, late charges, interest, and attorney fees in the Dearborn County Court. From a judgment favorable to HVL Developer, the Rasps and the other appellants appeal.

The Rasps first argue, in effect, availability fees are unconscionable and void as against public policy because their payment to HVL Developer (a) forces non-connected lot owners to subsidize, in part, the utility companies' operations but they derive no benefit therefrom, and (b) such fees constitute nothing more than a "windfall" to

---

1. The parties have stipulated and the trial court has determined once a lot owner connects to sewer and water service so as to become ratepayers to HVL Services, Inc. and HVL Utilities, Inc., the lot owner's obligation to pay further fees relating to sewer and water services to HVL Developer terminates.

HVL Developer, who being unregulated, may expend those funds to promote further sales of lots in the subdivision or otherwise, if it so chooses. HVL Developer, on the other hand, claims availability fees are in the public interest even though HVL Developer is not subject to regulation by our Public Service Commission.

## A. *Public Policy*

It is the public policy of this state to promote the orderly and healthful development of undeveloped land by the installation of sewer and water services in subdivisions of this nature. Under our Public Service Commission Act, organizations which furnish water and sewer services to the general public are public utilities. They may be granted monopolistic franchises by the Public Service Commission of Indiana and in turn are subject to regulation by that organization, *cf., U.S. Steel Corp. v. NIPSCO* (1985), Ind.App., 486 N.E.2d 1082, 1084; IND.CODE 8-1-2-1, *et seq.*, as to rates charged, territories served by such utilities, and other matters connected with their operations. They are subject to regulation to protect consumers from the abuses of monopoly, i.e. artificially high prices. As Justice DeBruler noted:

> The statutes which govern the regulation of utilities and which grant the PSCI its authority and power provide a surrogate for competition.

*Citizens Action Coalition v. NIPSCO* (1985), Ind., 485 N.E.2d 610, 614.

However, another and competing aspect of public policy is present in this fact situation. Private entrepreneurial endeavor is one of the touchstones of the free enterprise system. It rewards individual initiative, tends to put the unemployed to work, and generally contributes to the order and stability of our society. We judicially know it is the public policy of this state to promote and encourage private enterprise in the least restrictive manner possible. In this case, these two competing aspects of public policy come head to head.

The Indiana Public Service Act does not cover the precise situation which presently confronts us, namely, the collection of "availability" fees by a non-regulated par-

ent corporation which contributes a portion of such fees to its subsidiary corporations to make up their operating deficits on a voluntary basis. Thus, we may not turn to that act for guidance in this matter, but that is not the end of the story. Other principles may well govern the collection and disbursement of availability fees by non-regulated parent corporations. Thus, we look elsewhere for guidance.

Regarding the installation of sewer and water lines in subdivisions by private corporations, such endeavors may impress that portion of the developer's business "with a public interest." *See, Foltz v. City of Indianapolis* (1955), 234 Ind. 656, 130 N.E.2d 650, 656; *U.S. Steel Corp. v. NIPSCO* (1985), Ind.App., 482 N.E.2d 501, 505. Under the common law, businesses dedicated to a public use are under a duty to serve all who apply so long as facilities are available, without discrimination. *Foltz,* and *U.S. Steel Corp., supra.*

▇ It is our observation paragraph 9's availability fee provisions tend to promote both aspects of public policy discussed above. First, such fees permit real estate developers to recoup their costs of construction and a reasonable profit for their efforts in this regard. Secondly, those fees are a mildly coercive incentive to lot owners who are not connected to the available facilities to make the connections and become utility rate payers and receive the benefits of such service. Two benefits accrue to the public from such coercion, (1) connection to sewer and water lines promote a more healthful environment in the subdivision, and (2) connections to the utilities tend to broaden the rate base and reduce the rates that must be charged for the utility services in the subdivision.

However, once the developer recoups his costs of installation and a reasonable profit for his efforts, equitable principles may well apply. Because of the public interest with which that portion of the developer's business is impressed, those principles may make the developer a constructive trustee to see that thereafter, availability fees are applied to promote the orderly development of those facilities and the reduction of rates

the utilities must charge for their services, and are not used to promote further sales of lots in the developer's subdivision. As trustee, the developer may be accountable in an appropriate equitable action. For those reasons, we believe the availability fees provided in paragraph 9 are not void as against public policy.

The Rasps next argue paragraph 9 constitutes a personal contract between HVL Developers and their predecessors in title, not a covenant running with the land which binds them to pay the availability fees therein specified. We disagree.

■ Restrictive covenants are a form of express contract between grantor and grantee. *Burnett v. Heckelman* (1983), Ind.App., 456 N.E.2d 1094, 1097. Generally, the purpose behind a restrictive covenant is to maintain or enhance the value of land, often times by controlling the nature and use of surrounding lands. *Cunningham v. Hiles* (1979), 182 Ind.App. 511, 395 N.E.2d 851, 854, modified 402 N.E.2d 17; *Bob Layne Contractor, Inc. v. Buennagel* (1973), 158 Ind.App. 43, 301 N.E.2d 671. Here, the purpose of the restrictive covenant was to assure that sewer and water services would be available to all the lots in the subdivision. Under the covenant, it was HVL Developer's responsibility to install and maintain the required sewer and water lines and it was the lot owner's responsibility to pay HVL Developer the monthly fees therein provided after HVL Developer had installed those lines so they were accessible to the lots the owners had · purchased. Where the necessary requirements are satisfied, the affirmative burdens imposed by a covenant run with the land. *Brendonwood Common v. Franklin* (1980), Ind.App., 403 N.E.2d 1136, 1141.

A covenant is capable of running with the land when the grantor intends that it so run, when there is privity of estate between the subsequent grantees of the original covenantor and convenantee, and when the covenant touches and concerns the land. *Adult Group Properties, Ltd. v. Imler* (1987), Ind.App., 505 N.E.2d 459, 464; *Moseley v. Bishop* (1984), Ind.App., 470 N.E.2d 773; *Brendonwood Common,*

403 N.E.2d at 1141. The covenant here at issue meets all these requirements. The grantor intended it would run with the land, the required privity of estate is present, and the covenant touches and concerns the land. Thus, the Rasps are required to pay the "availability" fees required by paragraph 9 so long as they are not connected to the subdivision's sewer and water lines.

However, the Rasps also argue they should not be forced to pay those fees to HVL Developer because it has transferred all of its sewer and water lines to its two subsidiaries, HVL Services, Inc. and HVL Utilities, Inc., both public utility corporations subject to regulation by the Public Service Commission of Indiana. HVL Developer on the other hand argues because it has assured and continues to assure the availability of sewer and water service to each of the subdivision lots, it is entitled to collect paragraph 9 availability fees from non-connected lot owners until such time as each connects to the subdivision's sewer and water lines so as to become part of these utilities' rate bases.

B. *Evidence Insufficient to Prove HVL Developer's Right to Collect Paragraph 9 Availability Fees*

As part of its finding of facts, the trial court found:

6. Hidden Valley has conveyed all physical equipment pertaining to water and sewer service in the development to two corporations that are not parties in this lawsuit.

Such an assignment was contemplated by the parties. Paragraph 9 specifically provides for "location of the water and sewer mains in the subdivision by Hidden Valley Lake, Inc., its *successors*, or *assigns*." Further, the "grantee(s) jointly and severally promise[d] to pay the Grantors or its *assigns*" the required sewer and water availability fees. The "Grantor, its *successors* or *assigns*" are then to provide water and sewer connections for lot owners who request them and pay the agreed fee therein provided.

As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in or to the property or property rights that are comprehended within the terms of the assignment. Such transfer confers a complete and present right in the subject matter to the assignee. *Brown v. Indiana National Bank* (1985), Ind.App., 476 N.E.2d 888, 894. A right to damages for breach of contract is assignable. *Essex v. Ryan* (1983), Ind.App., 446 N.E.2d 368, 374.

The date HVL Developers transferred the sewer and water lines to its subsidiary public utility corporations does not appear in the record nor do the terms under which these transfers were made. If a contrary intention is not shown, an assignment ordinarily passes whatever is necessary to make it completely effectual, including the right to collect paragraph 9 availability fees in this case. An assignment vests in the assignee all rights, remedies, and contingent benefits which are incidental to the thing assigned, except those which are personal to the assignor and for his benefit only. 3 *I.L.E.* (Assignments) § 42, p. 185. Without evidence of the date of such transfers or the terms thereof, it was impossible for the trial court to determine whether HVL Developer or its assignees were entitled to sue to recover the unpaid availability fees HVL Developer here seeks to recover. Every action is to be prosected in the name of the real party in interest. Ind.Rules of Procedure, Trial Rule 17(A). On these points, there has been a failure of proof.

Reversed and remanded for a new trial.

NEAL, J., concurs.

SULLIVAN, J., concurs in result.