Frank N. HRISOMALOS, Athena R. Hrisomalos, Dennis L. Friesel, Donna M. Friesel, John M. Findley and Marjorie E. Findley, Appellants–Intervenors,

v.

Marc S. SMITH, Beth A. Smith and Minnette D. Deiss, Appellees–Petitioners.

No. 53A05–9201–CV–7.

Court of Appeals of Indiana, Fifth District.

Oct. 19, 1992.

Geoffrey M. Grodner, Mallor Grodner & Bohrer, Bloomington, for appellants-intervenors.

Frank A. Barnhart, Barnhart Sturgeon & Spencer, Bloomington, for appellees-petitioners.

SHARPNACK, Chief Judge.

On January 2, 1991, Marc and Beth Smith, who wished to purchase lots Nos. 7 and 8 located on the southern edge of Bloomington's Hillsdale First Addition ("Hillsdale") in order to operate a dentist's office, filed a complaint for declaratory judgment asking that a restrictive covenant benefiting the Hillsdale subdivision be declared invalid with respect to lots Nos. 7 and 8. Minnette Deiss, the owner of the lots, later joined in the Smiths' petition. (Petitioners will be referred to collectively as "Smiths") Frank N. Hrisomalos, Athena R. Hrisomalos, Dennis L. Friesel, Donna M. Friesel, John M. Findley and Marjorie E. Findley ("Intervenors") intervened pursuant to Ind. Trial Rule 24(A) to oppose the Smiths' complaint for declaratory judgment. Intervenors now appeal the trial court's order declaring the covenant that restricted to residential use property within the subdivision to be unenforceable with regard to lots Nos. 7 and 8. We reverse.

Intervenors raise three issues for review which we consolidate and restate as:

1. Whether the trial court's findings supported its conclusion that the restrictive covenant in question was invalid due to radical changes within and surrounding the subdivision.

2. Whether the trial court's findings supported a conclusion that Intervenors were barred from enforcing the restrictive covenant under the doctrine of acquiescence.

Hillsdale consists of ninety-six lots and was platted in March of 1946. The plat contained the following restrictive covenant:

"*BUILDINGS:* Only one single family dwelling house including necessary accessory buildings may be erected on each lot in this addition. No building or part thereof erected in this addition shall be used for business or manufacturing of any kind...."

(Record, p. 177.) Intervenors all own lots within the subdivision. Since 1946, there has been extensive commercialization in the area surrounding Hillsdale, and East Third Street, which borders Hillsdale to the south, has had a substantial increase in motor traffic. Within the neighborhood itself, there have been two significant developments not in conformity with the covenant. In 1953, the First Church of Christ Scientist ("Church") bought land within Hillsdale and began to operate a church on the property. The then owners of lots within Hillsdale unanimously consented to the conveyance and use of the property. In 1985, Dr. Norman Houze purchased property on the southern edge of Hillsdale and opened a chiropractic office which he operated continuously through the time of the hearing. Neither Intervenors nor any other lot owners acted to oppose such use of Dr. Houze's land.

The court granted the Smith's complaint and entered special findings. The court's findings of fact include the following relevant passages:

"Since 1953, the area surrounding the Addition has changed dramatically. Gone are the farms and lazy meadows within which the Addition lay in idyllic bliss. Come instead is the hustle and bustle of commercialized progress, as the city of Bloomington has grown....

Although there has been considerable commercialization outside the addition, residents within the Addition have steadfastly maintained their residential way of life. Within the addition neighbors still gather, and children still play, all in keeping with the residential mandate imposed by the covenant...."

(Record, p. 85.)

The court followed its findings with a lengthy discussion of applicable law, and concluded that a restrictive covenant will not be invalidated unless a radical change has occurred such that the original purpose of the covenant has been defeated. Following its discussion regarding radical change, the court stated the following:

"There has been a dramatic and compelling change within the Addition, for a

chiropractic office has been allowed to remain since 1985 without protest or action on the part of the other property owners. Intervenors have acquiesced in the violation of the restrictive covenant for Hillsdale Addition....

A covenant is a contract, and only those bound by the contract may enforce it. Landowners who seek the enforcement of restrictive covenants must do so immediately and consistently.... A court in equity cannot overlook their acquiescence. The rule as stated in *Wischmeyer v. Finch* [citation omitted], is that "... injunctive relief will be denied where complainant has been guilty of laches, waiver, or acquiescence." While this present case does not involve injunctive relief, this court's declaratory relief shall follow the same rule, for should this court dismiss this case as unripe, the same parties would certainly appear before it again, with only their titles changed from Petitioner to Respondent, and from Intervenor to Petitioner.

Thus, this court concludes that the presence of the chiropractor's office within the Addition adjacent to or in close proximity to the Intervenor's Lots, and the heavy commercialization outside the Addition are of such weight as to preclude enforcement of the restrictive covenant with regard to Lots 7 and 8...."

(Record, p. 92.)

 When we review a trial court's judgment based upon findings of fact and conclusions of law, we will reverse only if the findings and conclusions are clearly erroneous. A judgment is clearly erroneous when it is unsupported by the findings and conclusions. Findings of fact are clearly erroneous if the record fails to disclose any facts in evidence or any reasonable inferences from the evidence in support of the findings. *Donavan v. Ivy Knoll Apts. Partnership* (1989), Ind.App., 537 N.E.2d 47, 50. We will not reweigh the evidence

and we will affirm the trial court unless the evidence, when viewed in a light most favorable to the judgment, points uncontrovertibly to an opposite conclusion. *Id.* at 50–51.

In property law, the term "restrictive covenant" describes a contract between a grantor and grantee which restricts the grantee's use of land. Generally, the purpose behind restrictive covenants is to maintain or enhance the value of adjacent lands by controlling the nature and use of surrounding properties. *Cunningham v. Hiles* (1979), 182 Ind.App. 511, 515, 395 N.E.2d 851, 854, *order modified on reh'g*, 402 N.E.2d 17. Although the law does not favor restrictive covenants, the contractual nature of the restrictions has led courts to enforce them in equity as long as the restrictions are unambiguous and do not violate public policy. *Id.* However, public policy requires the invalidation of restrictive covenants when there have been changes in the character of the subject land that are "so radical as practically to destroy the essential objects and purposes of the agreement." *Cunningham*, 182 Ind. App. at 516, 395 N.E.2d at 855 quoting *Bachman v. Colpaert Realty Corp.* (1935), 101 Ind.App. 306, 319–320, 194 N.E. 783, 789.[1] Numerous personal defenses to actions in equity seeking to enforce restrictive covenants also exist. Such defenses include the familiar equitable defenses of clean hands, laches and estoppel as well as the defense of acquiescence. 2 *American Law of Property* § 9.39; *Wischmeyer v. Finch* (1952), 231 Ind. 282, 291, 107 N.E.2d 661, 665.

Intervenors contend that the trial court erroneously applied the personal equitable defense of acquiescence and that, even if the trial court's judgment is instead read to invalidate the covenant due to radically changed circumstances, its own findings do not support such a conclusion. Although the trial court's findings and conclusions

---

1. Originally, the change in character of a neighborhood as a justification for not enforcing a restrictive covenant developed as an equitable defense to injunctive relief sought to enforce a restrictive covenant but was not a defense to the existence of the covenant at law. 2 *American Law of Property* § 9.39 (1952 ed.). However, the modern trend is to use the change of character of a neighborhood to invalidate the covenant itself. *Id.*

could be read to apply either or both theories, we agree with Intervenors that the findings of fact do not support the trial court's judgment based upon either theory.

■ We first explore the question of whether radical change has occurred. When dealing with restrictive covenants covering the use of lands within a subdivision, there are two types of changes to consider: changes *within* the covered area and changes in the immediately surrounding area. While the latter changes should be considered, less weight should be attached to them than to changes within the subdivision. *Cunningham*, 182 Ind.App. at 517, 395 N.E.2d at 855. In either case, however, we must focus upon whether the changes have adversely affected the purpose of the covenant:

> "The party against whom enforcement of the covenant is sought bears the burden of showing that enforcement of the covenant would violate public policy (citation omitted). *This burden is not satisfied merely by proving that particular changes have occurred; rather, it also requires the party to show how the changes have adversely affected the purpose of the covenant.*"

*Id.* 182 Ind.App. at 518 at n. 3, 395 N.E.2d at 855 at n. 3 (emphasis added).

In *Cunningham*, homeowners in a residential subdivision sought to enjoin defendants from constructing a music store in the neighborhood. The trial court found that the restrictive covenant was unenforceable and denied the homeowners injunctive relief. In reversing the trial court, the court of appeals found that only two major changes had occurred in and around the neighborhood: 1) the construction of an office building, which protruded into one corner of the subdivision, had led to increased traffic within one corner of the subdivision, and 2) urban development had resulted in a dramatic increase in the amount of traffic on the border of the neighborhood. *Id.* The court concluded that neither change was so radical in na-

ture as to defeat the purpose of the covenant. 182 Ind.App. at 518, 395 N.E.2d at 856; *see also Burnett v. Heckelman* (1983), Ind.App., 456 N.E.2d 1094.

■ Here, the trial court found that only two changes existed within the neighborhood: the erection of the church[2] and the opening of Dr. Houze's chiropractic office. Although the trial court stated that the chiropractic office was a "dramatic and compelling" change within the subdivision (Record, p. 92), it also specifically found that "[a]lthough there has been considerable commercialization outside the Addition, residents within the Addition have steadfastly maintained their residential way of life." (Record, p. 85.) The trial court made no specific finding regarding the effects of either the church or the chiropractic office on the neighborhood's residential character. Likewise, although the trial court found that there had been heavy commercialization and an increase of traffic outside the subdivision, it did not find that these changes threatened the purpose of the covenant.

■ The judgment is also clearly erroneous under the alternative theory arguably relied upon by the trial court. A party opposing equitable enforcement of a restrictive covenant may plead as a defense the opponent's acquiescence to similar violations. There are two competing views of the rationale underlying the doctrine of acquiescence as applied to property law. The following explanation is provided in 2 *American Law of Property:*

> "Where the complainant has failed to enforce a similar equitable servitude against third parties, he has debarred himself from obtaining equitable relief against the defendant for subsequent violations of the same character. The reason for allowing this defense of acquiescence is the belief that the complainant, by his conduct in failing to seek enforcement against similar violations by third parties, has induced the defendant to as-

---

**2.** The trial court stated that, because the church was built pursuant to an agreed modification of the restrictive covenant between it and the land-

holders, it was to be considered a change outside the area covered by the restrictive covenant.

sume that the restrictions are no longer in effect."

2 *American Law of Property* § 9.39; *See also Sandy Point Improvement Co. v. Huber* (1980), 26 Wash.App. 317, 319, 613 P.2d 160, 162. The Restatement of Property expresses a slightly different basis for the doctrine:

"Acquiescence by one person in a violation by another of an obligation arising out of a promise respecting the use of land disables the one so acquiescing from enforcing by injunction an obligation of like effect against a third person when the acquiescence has the effect of preventing the realization of the benefit sought to be gained by the performance of the obligation attempted to be enforced."

*Restatement of Property* § 561 (1944); *See also Schwartz v. Holycross* (1925), 83 Ind. App. 658, 665, 149 N.E. 699, 704 (original owner of land constituting subdivision cannot selectively enforce covenants against grantees where a general failure to enforce has resulted in an abrogation of the purpose of the restriction).

 Regardless of the moving principle behind the doctrine, when analyzing a defense of acquiescence, the primary concern is the effect of the prior violations upon the ability of the proponent of the restriction to enjoy the benefits of the covenant compared to the potential abridgement of the proponent's enjoyment of the covenant's benefit caused by the violation sought to be enjoined. *Bowen v. Smith* (1909), 76 N.J.Eq. 456, 462, 74 A. 675, 678; *Johnson v. Robertson* (1912), 156 Iowa 64, 83, 135 N.W. 585, 593. A review of the relevant case law reveals three factors particularly significant to the analysis: 1) the location of the objecting landowners relative to both the property upon which the nonconforming use is sought to be enjoined

and the property upon which a nonconforming use has been allowed, 2) the similarity of the prior nonconforming use to the nonconforming use sought to be enjoined, and 3) the frequency of prior nonconforming uses. *See* 2 *American Law of Property* § 9.39 [3]; *See also Morris v. Nease* (1977), 160 W.Va. 774, 780, 238 S.E.2d 844, 848 (location); *Lake Development Enterprises, Inc. v. Kojetinsky* (1966), Mo.App., 410 S.W.2d 361, 366 (similarity of nonconforming uses); *Kajowski v. Null* (1962), 405 Pa. 589, 598, 177 A.2d 101, 106 (similarity of nonconforming uses); *Ellis v. George Ryan Co.* (1981), Ind.App., 424 N.E.2d 125 (frequency of violations). Consideration of the relevant factors with regard to the nonconforming use identified by the trial court leads to the conclusion that Intervenors did not acquiesce to Smith's proposed use of lots Nos. 7 and 8.

We briefly note that the trial court concluded that the church property was not a factor in this case because all property owners had explicitly agreed to its use. We agree that the operation of a church is sufficiently dissimilar to, and a less substantial violation than, the operation of a professional office. Although the church property abuts the property owned by Intervenors Hrisomalos and Findley and one of the two lots Smith proposes to purchase, the infringement upon adjoining property owners' enjoyment of the covenant's benefits is not so substantial that failure to enforce the covenant against the church could reasonably induce third parties to believe that the covenant had lost its vitality. Likewise, the uses are dissimilar enough that enforcement against Smith would allow Intervenors to preserve benefits under the covenant which still existed after the church began its operation. *See*

---

**3.** "Acquiescence by the complainant to violations of dissimilar restrictions cannot be a bar to enforcement where the restrictions are essentially different so that abandonment of one would not induce a reasonable person to assume that the other was also abandoned. Likewise, failure to sue for prior breaches by others where the breaches were noninjurious to the complainant cannot be treated as an acquiescence sufficient to bar equitable relief against a more serious and damaging violation. This situation may arise where the prior violations have been in a distant part of the subdivision while the present violation is immediately adjacent to the complainant's land."

*Cowling v. Colligan* (1958), 158 Tex. 458, 312 S.W.2d 943, 946.[4]

We turn now to the nonconforming use upon which the trial court based its finding of acquiescence: Dr. Houze's office. While we agree that Dr. Houze's office and Smith's proposed dentist's office are virtually indistinguishable uses, we conclude that the separation between Dr. Houze's office and the lots of Intervenors, as opposed to the close relation between Intervenors' property and lots Nos. 7 and 8, precludes a finding of acquiescence. The Houze property is across Hillsdale Drive from the two lots in issue and does not abut property owned by any of Intervenors, nor is it in the same block as either the property in issue or the property of Intervenors. *See Morris*, 160 W.Va. at 780, 238 S.E.2d at 848 (In analyzing defendant's claim of acquiescence, the court found that violations outside the block where the complainants' property was located were "too remote to be considered injurious to the complainants' interests.")

We are not dealing here with acquiescence as to a particular piece of property with a prior history of nonconforming use as in *Morris* (relied upon by Smith) and *Wischmeyer v. Finch* (1952), 231 Ind. 282, 107 N.E.2d 661 (relied upon by the trial court). Nor are we dealing with a subdivision in which there was a history of multiple and long-standing noncompliance as in *Ellis*, 424 N.E.2d at 126 and *Goodwin Brothers v. Combs Lumber Co.* (1938), 275 Ky. 114, 120 S.W.2d 1024 (both cited by Smith). Rather, we have a single similar instance of such use in an area separate from, albeit near, the area in issue. In such a case, Intervenors cannot be said to have induced reasonable reliance nor is there a lack of appreciable benefit in enforcing the covenant against the more proximate nonconforming use while not enforcing the covenant against the more distant nonconforming use.

The findings of the court do not support either the conclusion that there has been sufficient change within the subdivision and in the surrounding areas that would vitiate the restriction or the conclusion that there has been acquiescence that would support vitiation of the restriction as to the property in question. We therefore reverse the judgment of the trial court and direct that judgment be entered for Intervenors and against Smiths.

REVERSED.

BARTEAU and ROBERTSON, JJ., concur.

---

**4.** The *Cowling* court held that, although the erection of churches violated covenants restricting the use of land within a subdivision to residential uses:

"It has been held, however that the violation is so trivial in character that the failure of other property owners in the restricted area to complain does not operate as a waiver of their right to enforce the covenant against business or commercial development or as an abandonment of the covenant."