## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 30 2015, 9:36 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Lindsey A. Grossnickle | Jeffrey S. Arnold |
| Bloom Gates & Whiteleather, LLP | Columbia City, Indiana |
| Columbia City, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| David R. Ulrich and Marcia K. Ulrich, *Appellants-Plaintiffs,* v. Brad R. Minear and Miranda G. Minear, *Appellees-Defendants* | March 30, 2015 <br><br> Court of Appeals Case No. 92A05-1408-PL-363 <br><br> Appeal from the Whitley Superior Court <br><br> The Honorable Douglas M. Fahl, Judge <br><br> Case No. 92D01-1311-PL-353 |

**Crone, Judge.**

## Case Summary

[1]     In the mid-1990s, David R. Ulrich and Marcia K. Ulrich purchased a house in a Columbia City subdivision. The subdivision lots are subject to six restrictive

covenants; number 4 prohibits the real estate from being used for commercial purposes. In 2013, Brad R. Minear and Miranda G. Minear purchased a house in the same subdivision and posted a yard sign reading, "Future home of Minear Real Estate." Tr. at 60. The Ulrichs filed a complaint for injunctive relief to enforce covenant number 4 against the Minears. At an evidentiary hearing, the Ulrichs asserted for the first time that they were entitled to relief based on res judicata. The trial court issued an order denying the Ulrichs' complaint, finding that they had acquiesced to other property owners' violations of covenant number 4 and that their assertion of res judicata was untimely.

[2] On appeal, the Ulrichs argue that the trial court erred in denying their complaint. We conclude that ample evidence supports the trial court's finding of acquiescence and that res judicata is inapplicable. Therefore, we affirm.

## Facts and Procedural History[1]

[3] The relevant facts are undisputed. In the mid-1990s, the Ulrichs purchased a house on North Park Drive in the North Park Subdivision ("the Subdivision") in Columbia City. North Park Drive is an east-west dead-end street that intersects Main Street at its eastern end. The Ulrichs' house is closer to the cul-

---

[1] We remind the Ulrichs' counsel that an appellant's statement of facts "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed" and "shall be in narrative form and shall not be a witness by witness summary of the testimony." Ind. Appellate Rule 46(A)(6).

de-sac than to Main Street. The Subdivision's twenty-seven lots are subject to the following restrictive covenants via warranty deed:

>   1. No outdoor toilets shall be erected or maintained, and all sewage must be drained into a septic tank which shall meet Indiana State Board of Health rules.
>
>   2. No house shall be build [sic] closer to the street then [sic] the first house constructed in the line of lots in which the above described lots is situated.
>
>   3. No house shall be constructed upon the above described real estate which shall consist of less than seven hundred fifty (750) square feet of floor space on the first floor.
>
>   4. Said real estate shall be used for residential purposes only and shall not be used for any commercial, mercantile or manufacturing purpose.
>
>   5. No buildings except a residence and garage shall be constructed on said lot. Such residence shall be a single family dwelling or a two family dwelling consisting of one apratment [sic] upstairs and one apartment downstaris [sic], and no other type of duplex shall be permitted.
>
>   6. All buildings constructed shall be of neat design and sturdy and attractive construction.

Plaintiffs' Ex. D. The Ulrichs' property comprises lot 8 and the west half of lot 7, which are zoned residential.

[4]   In November 2013, the Minears purchased a house in the Subdivision four houses east of the Ulrichs. The Minears' property fronts both North Park Drive and Main Street and comprises lot 2 and the east half of lot 3, which are zoned general business. The Minears posted a yard sign reading, "Future home of Minear Real Estate." Tr. at 60.

Later that month, the Ulrichs filed a complaint for injunctive relief to enforce covenant number 4 against the Minears. The Minears filed an answer asserting that the Ulrichs "are estopped from asserting the restrictive and enforceable nature of the covenants" because they "or their predecessors in right have agreed, either expressly or impliedly, with the commercial nature of this subdivision, particularly those lots located on main Columbia City thoroughfares." Appellants' App. at 8.

An evidentiary hearing was held in June 2014. On July 9, 2014, the trial court issued an order with the following relevant findings and conclusions:

> 2. The parties agree that the original subdivision contained six (6) Restrictive Covenants that all parties agree "run with the land."
>
> 3. Restrictive Covenant number 1 is currently being violated by all parties at issue and no modification of the Covenants has been sought or recorded by the landowners.
>
> 4. Restrictive Covenant numbers 2, 3, and 5 are currently being violated on lots 23, 24, 25, 26, and 27 by the erection and operation of a senior living facility.
>
> 5. The landowners have not sought to enforce the Restrictive Covenants on said lots nor have they recorded a variance for the violation of said Restrictive Covenants.
>
> 6. Lot number 1 and a portion of lot number 3, commonly referred to as the S & S Construction Company property, violate Restrictive Covenant number 5 [sic[2]].

---

[2] In light of finding number 7, it appears that "Covenant number 5" should be "Covenant number 4." We presume that this is a scrivener's error.

7. The landowners have not sought to enforce the Restrictive Covenants on said lots nor have they recorded a variance for the violation of said Restrictive Covenants. The Court notes that Plaintiffs testified that, at some point in time, an agreement was reached with the property owner for a limited variance; however, the variance was never reduced to writing nor did the landowner of lot 1 and a portion of lot 3 testify that he had agreed to said variance. All parties agree that the property is currently being used for commercial purposes. The Court finds that the issue of whether the house itself or the garage is being used is irrelevant to the issue. The "property" is being used for commercial purposes.

8. Lot number 20 violates Restrictive Covenant numbers 4 and 5; however, a variance was obtained and properly signed by the landowners. Therefore, said violation does not prevent the landowners from enforcing the Restrictive Covenants on other properties.

9. Lot number 19 violates Restrictive Covenant number 4, and the landowners have not sought to enforce the Restrictive Covenants nor have they recorded a variance for the violation of said Covenants.

10. Lot numbers 21 and 22 violate Restrictive Covenant numbers 4 and 5, and the landowners have not sought to enforce the Restrictive Covenants nor have they recorded a variance for the violation of said Covenants.

11. Plaintiffs' request of the Court to grant Plaintiffs' relief based on the doctrine of *Res Judicata* should be denied as untimely filed and Plaintiffs' presentation at trial did not give Defendants an opportunity to explore the facts of the prior Plaintiffs' dismissal or provide the Court with sufficient information to determine whether the doctrine should be applied to the current matter.

12. The Restrictive Covenants supersede the City of Columbia City's zoning applications and the allegations by Defendants that the property is zoned for general business has no bearing on the Court's

decision.[3]

13.  Plaintiffs' assertion that Defendants come into the matter with "unclean hands" is unfounded, and the Court denies the same.  To the contrary, the Court finds that Plaintiffs are currently in violation of Restrictive Covenant number 1 and they themselves do not possess "clean hands."

14.  The presence of Ace Hardware to the west of the subdivision at issue has no bearing on the Court's decision for the reason that the business's expansion has not changed the nature and character of the subdivision.

15.  The Restrictive Covenants for the subdivision at issue have been violated and degraded to the point that they are virtually unenforceable on any of the properties.  The only Covenant that arguably is not currently being violated is Covenant number 6, which is wholly subjective and most likely unenforceable on its face.

16.  The landowners have acquiesced in the violation of the Covenants to such a degree that it would be inappropriate to single out one property owner and attempt to enforce only certain Covenants against that property owner.  The Court notes that Plaintiffs have not asserted a violation against Defendants for violation of Covenant number 1. All parties agree that Defendants are currently violating said Covenant, as are a majority of the other landowners.

17.  Plaintiffs' Complaint for Injunctive Relief should be denied.

*Id*. at 65-67.

The Ulrichs now appeal.  Additional facts will be provided as necessary.

---

[3] *See Highland Springs S. Homeowners Ass'n v. Reinstatler*, 907 N.E.2d 1067, 1073 (Ind. Ct. App. 2009) ("[Z]oning ordinances and laws cannot relieve real estate from valid private restrictive covenants") (quoting *Suess v. Vogelgesang*, 151 Ind. App. 631, 639, 281 N.E.2d 536, 541 (1972), *trans. denied*), *trans. denied*.

## Discussion and Decision

## Standard of Review

[8]　The Ulrichs assert that the trial court erred in denying their complaint for injunctive relief. "The granting or refusing of injunctive relief is a matter within the trial court's discretion." *Oakes v. Hattabaugh*, 631 N.E.2d 949, 953 (Ind. Ct. App. 1994), *trans. denied*. "A mandatory or prohibitory injunction is an extraordinary equitable remedy which should be granted with caution. The plaintiff has the burden of demonstrating certain and irreparable injury." *Id*. (citation omitted).

> A party who had the burden of proof at trial appeals from a negative judgment and will prevail only if it establishes that the judgment is contrary to law. A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead only to one conclusion, but the trial court reached a different conclusion. In addition, where, as here, the trial court issues findings of fact and conclusions [thereon], its findings and conclusions shall not be set aside unless clearly erroneous. We review the judgment by determining whether the evidence supports the findings and whether the findings support the judgment. We consider only the evidence favorable to the judgment and all reasonable inferences to be drawn from that evidence.

*Harness v. Parkar*, 965 N.E.2d 756, 760 (Ind. Ct. App. 2012) (citations omitted).

We will neither reweigh evidence nor judge witness credibility. *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651 (Ind. Ct. App. 2012).

## Section 1 – The trial court did not err in denying the Ulrichs' complaint for injunctive relief based on acquiescence.

The Ulrichs filed their complaint to enforce covenant number 4 against the Minears, who wanted to use their property for commercial purposes. A restrictive covenant is a contract between a grantor and a grantee that restricts the grantee's use of land. *Hrisomalos v. Smith*, 600 N.E.2d 1363, 1366 (Ind. Ct. App. 1992). "The general purpose of a restrictive covenant is to maintain or enhance the value of adjacent property by controlling the nature and use of surrounding properties. Restrictive covenants are disfavored in the law." *Holliday v. Crooked Creek Vill. Homeowners Ass'n*, 759 N.E.2d 1088, 1092 (Ind. Ct. App. 2001) (citation omitted).

"A party defending against an equitable enforcement of a restrictive covenant may plead the defense of acquiescence where the party seeking the injunction acquiesced in similar violations." *Stewart v. Jackson*, 635 N.E.2d 186, 194 (Ind. Ct. App. 1994), *trans. denied*. "[W]hen analyzing a defense of acquiescence, the primary concern is the effect of the prior violations upon the ability of the proponent of the restriction to enjoy the benefits of the covenant compared to the potential abridgement of the proponent's enjoyment of the covenant's benefit caused by the violation sought to be enjoined." *Hrisomalos*, 600 N.E.2d at 1368.

> The trial court must consider three factors to determine acquiescence: 1) the location of the objecting landowners relative to both the property upon which the nonconforming use is sought to be enjoined and the property upon which a nonconforming use has been allowed;

2) the similarity of the prior nonconforming use to the nonconforming use sought to be enjoined; and, 3) the frequency of prior nonconforming uses.

*Stewart*, 635 N.E.2d at 194.

[11] As mentioned above, the Subdivision comprises twenty-seven lots. Eighteen lots front North Park Drive (lots 2 through 11 on the north, and lots 12 through 19 on the south). Lots 2 and 19 also abut Main Street. Lot 1 abuts the northern boundary of lot 2 and Main Street, and lot 20 abuts the southern boundary of lot 19 and Main Street. Lots 21 through 27 abut what appears to be an alley or a utility easement on the southern boundaries of lots 12 through 18 and 20 and front the north side of Diplomat Drive. Lot 21 also abuts Main Street. Plaintiffs' Ex. A.

[12] The trial court found that lot 1 and a portion of lot 3 were being used for commercial purposes by S & S Construction Company and that covenant number 4 was not enforced on those lots. The Ulrichs complain that "[t]he trial court assumes facts not in evidence" because David testified that "the owner of S & S petitioned the neighborhood to conduct business" on those lots and that

> the neighborhood agreed for the garage to be utilized for business purposes. There was no evidence to the contrary. Ulrich was not asked to produce a document which memorialized the neighborhood's consent. The trial court assumed it was not reduced to writing. However, the question was never asked.

Appellants' Br. at 15. The Ulrichs cite no authority for the proposition that the Minears were required to prove a negative, i.e., that no written agreement existed. And the trial court was not obligated to believe David's testimony,

even if it was uncontradicted. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004) ("As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted.").[4] We may not reassess the trial court's credibility determination on appeal. *Estate of Kappel*, 979 N.E.2d at 651.

[13] The trial court also found that lots 19, 21, and 22 violate covenant number 4 and that the covenant was not enforced on those lots. The record reflects that lot 19 contains a parking lot for the bank located on lot 20. Lot 21 contains a gas station, and lot 22 contains a rental truck parking lot. The Ulrichs argue that "[t]he trial court assumed there were no recorded modifications or neighborhood agreements allowing commercial activity on those lots." Appellants' Br. at 15. Again, the Ulrichs were not required to prove that no written agreements existed. The Minears' counsel asked David if the Subdivision's homeowners "always resisted any inroads into setting aside [the] covenants," and he replied, "They have always had their input into any change that the neighborhood has gone through." Tr. at 55. The trial court was not required to believe this testimony, and even if it did, it reasonably could have inferred that no written agreements existed because none were mentioned with respect to lots 19, 21, and 22.

[14] Turning now to the three factors listed in *Stewart*, 635 N.E.2d 186, the evidence most favorable to the trial court's judgment establishes that (1) the Ulrichs live

___

[4] As was the trial court, we are unpersuaded by the Ulrichs' argument that the lots are not used for commercial purposes because S & S operates out of a garage.

on the same street as or only one street over from all the commercial enterprises at issue; (2) the parking lots and gas station reasonably could be considered more substantial violations of covenant number 4 than the Minears' real estate business; and (3) the parking lots and gas station have been around since at least the 1990s, and the construction company began doing business after the 2000 dismissal of a lawsuit filed by the former owners of the Minears' property, who wanted to build a commercial building. Based on the foregoing, "we find ample evidence supporting the defense of acquiescence." *Id*. at 194. Therefore, we conclude that the trial court did not clearly err in denying the Ulrichs' complaint for injunctive relief on this basis.[5]

## Section 2 – Res judicata is inapplicable.

Apparently intending to show that the validity of covenant number 4 as to the Minears' property was res judicata, the Ulrichs offered into evidence a 1998 complaint that the property's prior owners had filed against the Ulrichs and other Subdivision lot owners to "amend and modify" covenant number 4 to allow the "establishment and erection of a commercial building"; the complaint alleged that this was "consistent with both the current and past use of the real

---

[5] In their reply brief, the Ulrichs contend that "[i]t was the Minears' burden to show the changes are so radical as to practically destroy the essential objects and purposes of the covenant." Appellants' Reply Br. at 4 (citing *Hrisomalos*, 600 N.E.2d at 1366). This language relates to public policy considerations and not specifically to an acquiescence defense. *See Hrisomalos*, 600 N.E.2d at 1366 ("[P]ublic policy requires the invalidation of restrictive covenants when there have been changes in the character of the subject land that are 'so radical as practically to destroy the essential objects and purposes of the agreement.' Numerous personal defenses to actions in equity seeking to enforce restrictive covenants *also* exist. Such defenses include the familiar equitable defenses of clean hands, laches and estoppel as well as the defense of acquiescence.") (emphasis added) (citation omitted).

estate in question as all adjourning [sic] lots on both sides of Main Street have been used for a commercial purpose for many years." Plaintiff's Ex. H at 4. The Minears objected on relevancy grounds, noted that the complaint had been dismissed with prejudice (on the plaintiffs' motion in 2000), Plaintiffs' Ex. I, and expressed doubt as to the dismissal's "res judicata effect." Tr. at 12. Ultimately, the trial court ruled as follows: "It'll come in. I'll look at it. I'll consider it, but I may or may not determine whether or not it has … it has any controlling effect on the case." *Id.* at 14. In its order, the trial court determined that the Ulrichs' request for relief based on res judicata "should be denied as untimely filed" and that their "presentation at trial did not give [the Minears] an opportunity to explore the facts of the prior Plaintiffs' dismissal or provide the Court with sufficient information to determine whether the doctrine should be applied to the current matter." Appellants' App. at 66.

[16] The Ulrichs contend that the trial court erred in finding their request untimely, noting that the Minears did not object on this basis. We need not address the Ulrichs' timeliness argument because we conclude that res judicata is inapplicable. "The doctrine of res judicata serves to prevent the litigation of matters that have already been litigated. Res judicata consists of two distinct components: claim preclusion and issue preclusion." *TacCo Falcon Point, Inc. v. Atl. Ltd. P'Ship XII*, 937 N.E.2d 1212, 1218 (Ind. Ct. App. 2010). The Ulrichs assert that claim preclusion applies here.

> Claim preclusion is applicable when a final judgment on the merits has been rendered and acts to bar a subsequent action on the same claim between the same parties. When claim preclusion applies, all matters

that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. Claim preclusion applies when the following four factors are present: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter now at issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies.

*Id*. at 1218-19 (citations omitted).

[17] "[E]ither party may move to dismiss a claim and a dismissal with prejudice constitutes a dismissal on the merits." *Afolabi v. Atl. Mortg. & Invest. Corp.*, 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006). "Thus, a dismissal with prejudice is conclusive of the rights of the parties and is *res judicata* as to any questions that might have been litigated. In determining whether the doctrine should apply, it is helpful to inquire whether identical evidence will support the issues involved in both actions." *Id*. (citation omitted).

[18] The Ulrichs argue,

> Here, the former judgment was rendered by a competent jurisdiction; the former judgment was rendered on the merits; restrictive covenant Number 4 was in issue in the 1998 cause and is the sole issue in the present cause; and the controversy adjudicated in the former action was between, among others, the Ulrichs and privies of the Minears.

Appellants' Br. at 12. Our supreme court has explained, however, that "where additional facts are pleaded in the subsequent complaint, bringing different questions of fact or law before the court, the judgment in the first action is no bar or estoppel by record to the second." *Stuck v. Town of Beech Grove*, 201 Ind. 66, 163 N.E. 483, 485 (1928).

The 1998 lawsuit was brought by the Minears' predecessors to amend or modify covenant number 4 to allow for the construction of a commercial building on the premises, whereas the Ulrichs filed their lawsuit to enforce the covenant against the Minears, who wanted to use the house for commercial purposes and sought to nullify the covenant based on acquiescence. Thus, the facts and legal issues of the two cases are different. And because the first case was dismissed on the plaintiffs' motion and the Ulrichs offered no evidence as to the reasons for dismissal, we cannot tell what, if anything, was adjudicated in that case. Therefore, we conclude that res judicata is inapplicable and affirm the trial court's denial of the Ulrichs' complaint for injunctive relief.[6]

Affirmed.

Friedlander, J., and Kirsch, J., concur.

---

[6] Given our resolution of this appeal, we need not address the Ulrichs' arguments about the trial court's consideration of other covenants and its finding regarding unclean hands. *See Borth v. Borth*, 806 N.E.2d 866, 870 (Ind. Ct. App. 2004) ("Where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute a basis for reversal even if erroneous.").