# FOR PUBLICATION



FILED
Aug 13 2012, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SCOTT A. TANNER**
Tanner Law Group
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JOHN D. GAY**
North Vernon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CSL COMMUNITY ASSOCIATION, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 40A01-1112-MI-579 |
| | ) | |
| CLARENCE RAY MEADOR, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-0905-MI-160

**August 13, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Country Squire Lakes Community Association, Inc., a homeowner's association, (HOA), appeals the trial court's grant of Clarence Ray Meador's (Meador) motion for declaratory judgment, which abrogated Meador's obligation to pay HOA dues and assessments. We reverse.

**Issue**

The sole issue for our review is whether the trial court erred in abrogating Meador's obligation to pay HOA dues and assessments.[1]

**Facts and Procedural History**

The Country Squire Lakes Community (Community) was established as a gated residential vacation and retirement community in the 1970's. The Community is located on approximately 1400 acres in North Vernon and includes approximately 4000 lots and more than thirty miles of paved roads. At the time the Community was developed, it provided residents with a variety of recreational amenities, such as an Olympic-sized swimming pool, tennis courts, playgrounds, clubhouses, picnic areas, a marina, lakes, beaches, and a campground. There was a full-time security team of fifteen to twenty guards that patrolled the premises. The HOA was organized to collect dues and assessments from property owners to pay for maintenance of the common areas and amenities.

On his first visit to the Community in 1997, fifty-nine-year-old Meador was impressed

---

[1] The HOA also argues that if Meador's obligation to pay dues and assessments is abrogated, the abrogation terminates Meador's right to vote in HOA business. Because we find that Meador's obligation to pay dues and assessments was not abrogated, we need not address this issue.

that the Community was the largest recreational facility in the Midwest. Meador observed residents riding bicycles, boating on the lake, using grills in the park and campground, swimming, and playing tennis, badminton, and volleyball.

The following year, Meador and his wife, who had been travelling around the country in their motor home, purchased Lot 620, which included a double-wide trailer and a forty-foot boat dock. Meador owned a pontoon boat that he regularly drove across the lake to the marina to purchase gas for his lawnmower and ice cream or a Popsicle. The Meadors also had a golf cart and bicycles, which they rode around the community.

In 2006, Meador purchased Lot 619. The deed for each lot contains a list of property covenants labeled "Restrictions, Conditions, Covenants, and Agreements," (Covenants). Appellant's App. at 7, 17. The Covenants state that every property owner shall be a mandatory member of the HOA and shall pay his allocated share of the mandatory dues and assessments to the HOA for the costs to maintain the common areas, streets, lakes, dams, and other improvements and amenities. The annual dues are $75 per lot, and the current annual assessment is $300 per lot. The Covenants further provide that they run with the land, and that the property owner agrees to pay dues and assessments for community property irrespective of whether the privilege of using the property is exercised.

In addition, the HOA's Bylaws provide that each property owner may cast only one vote regardless of the number of lots that he owns, and that an owner cannot vote if he is delinquent in paying dues or assessments for any of the lots that he owns. The Bylaws further provide that a lot owner's membership terminates when the member no longer owns

any lots.

As the years passed and the economy fluctuated, the Community was invaded by investment purchasers who purchased lots for rental or contract properties. As the Community shifted from owner-occupied to tenant-occupied, the rental property owners frequently stopped paying the fees and assessments to the HOA. Currently 60% to 65% of these owners are delinquent on their fees and assessments, leaving the HOA with a three to four million dollar revenue shortfall. As a result of this shortfall, dues and assessments are used on essentials such as payments on a $950,000 improvement loan, repairs to a dam, insurance, and limited road maintenance, leaving insufficient funds to maintain the recreational amenities. For example, the Olympic-sized swimming pool and the children's wading pool are both empty and need to be repaired before they can be refilled. The surface of the tennis court is rubble, and the court has no net. In addition, Meador has not been able to use his boat dock in six years and had to move his pontoon boat to another lake when the Community's lake became contaminated with raw sewage. Further, the bathhouse is saturated with mildew, the putting green is not usable, and there is just one tire swing on the entire playground. Residents are no longer allowed to play cards in the clubhouse, and arsonists burned down the pavilion. There is no longer a full-time security force patrolling the Community, and the Community's security gates have been removed.

In addition to the demographical changes in the community, the HOA has suffered from years of financial mismanagement. For example, as far back as June 2005, the HOA president discovered a $450,000 shortfall in the budget and resigned because he knew that

the HOA would run out of money before the end of the fiscal year. In 2008, the HOA borrowed $950,000 to repair deteriorating roads but was only able to repair seven to ten miles of them. Insurance proceeds for the repair of the pool were not used for that purpose, and the HOA has not been placing money in a reserve fund as required by the covenants. Currently, the reserve fund has only $15,000, which is earmarked for a new snow plow truck.

The HOA hired a management company in August 2009 to help reduce the shortfall so that the recreational amenities could be repaired. However, at trial, the management company's office manager testified that after two years, 60% to 65% percent of the property owners were still not paying their dues and assessments, and the office manager believed that it could take five to six years "to get it back where it was" so long as nothing unforeseen happens during that time. Tr. at 90.

Over the years, Meador, who has lived in the Community for fifteen years and regularly paid his dues and assessments, has tried to influence the HOA Board of Directors in their budgetary decisions. However, his interest in the Community has not been well-received. For example, at one board meeting, he was told to "sit down and shut up and if [he didn't] like it, get out." Tr. at 10. Meador has also unsuccessfully tried to get a financial audit of the HOA for years. Eventually, Meador stopped paying the assessments for Lot 619. At the 2009 annual HOA meeting, Meador was not allowed to vote because of this delinquency. As a result, in May 2009, Meador filed a Complaint for Declaratory Judgment wherein he asked the trial court to issue a declaratory judgment advising whether he was a member of the HOA and whether he had been illegally denied his right to vote on HOA

5

matters. Meador explained that he filed the complaint because he was "tired of being told to sit down and shut up" and hoped to see the current HOA dissolved and replaced. Tr. at 42.

Meador filed an amended complaint in 2009, wherein he added counts for breach of contract, negligence, and constructive fraud. In June 2011, following unsuccessful attempts at mediation, now seventy-four-year-old Meador filed a Second Amended Complaint for Declaratory Judgment wherein he again asked the trial court to issue a declaratory judgment advising whether he was a member of the HOA and whether he had been illegally denied his right to vote on HOA matters. Meador also asked the trial court to abrogate his obligation to pay fees and assessments to the HOA because the HOA had not maintained the Community's amenities and common areas.

On November 30, 2011, following a bench trial, the trial court issued an amended order[2] which concluded that the changes in the Community were so radical that the original purpose of the Community and the deed restrictions had long ago been defeated. The trial court therefore abrogated Meador's obligation to pay dues and assessments. The court further concluded that Meador could still vote at the HOA meeting because his obligation to pay dues and assessments had been abrogated. Lastly, the trial court stated that other delinquent property owners could not vote. The HOA appeals.

**Discussion and Decision**

The HOA argues that the trial court erred in abrogating Meador's obligation to pay dues and assessments as provided by one of the covenants in the deed to Meador's property.

---

[2] The amended order redacted references to a document that was not admitted into evidence.

6

When special findings of fact and conclusions of law are made in accordance with Indiana Trial Rule 52, this Court must determine whether the evidence supports the findings and whether the findings support the judgment. Mayer v. BMR Properties, LLC, 830 N.E.2d 971, 978 (Ind. Ct. App. 2005). Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and conclusions which rely upon those findings. Dallas v. Cessna, 968 N.E.2d 291, 296 (Ind. Ct. App. 2012). In establishing whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. Id.

While conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. Id. However, while we defer substantially to findings of fact, we do not do so for conclusions of law. Id. We evaluate conclusions of law de novo and owe no deference to a trial court's determination of such questions. Id.

A restrictive covenant is an express contract between the grantor and the grantee that restrains the grantee's use of his land. Villas West II of Willowridge Homeowners Ass'n, Inc. v. McGlothin, 885 N.E.2d 1274, 1278 (Ind. 2008), cert. denied, 555 U.S. 1213, 129 S.Ct. 1527, 173 L.Ed.2d 657 (2009). Although the law does not favor restrictive covenants, the contractual nature of these restrictions has led courts to enforce them in equity as long as the restrictions are unambiguous and do not violate public policy. Hrisomalos v. Smith, 600 N.E.2d 1363, 1366 (Ind. Ct. App. 1992). However, public policy requires the invalidation of

7

restrictive covenants when there have been changes in the character of the subject land that are "so radical as practically to destroy the essential objects and purposes of the agreement." Cunningham v. Hiles, 182 Ind. App. 511, 516, 395 N.E.2d 851, 855 (1979) (quoting Bachman v. Colpaert Realty Corp., 101 Ind. App. 306, 319-20, 194 N.E. 783, 789 (1935)).

Here, the trial court concluded that because the amenities in the Community had not been maintained, the changes in the Community were so radical that the original purpose of the Community and the deed restrictions were destroyed. The trial court therefore abrogated Meador's obligation to pay dues and assessments. The HOA responds that the trial court's decision "conflicts with long-established Indiana contract law." Appellant's Br. at 13.

Bob Layne Contractor, Inc. v. Buennagel, 158 Ind. App. 43, 301 N.E.2d 671, 678 (1973) and Sorrentino v. Cunningham, 111 Ind. App. 212, 39 N.E.2d 473 (1942), are instructive. In Bob Layne, this Court held that the construction of a super highway along one edge of a restricted residential area was not a sufficient change of condition to abrogate restrictions against commercial development in favor of lots abutting the highway where the benefits of the covenant could still be realized by property owners in the restricted area. Bob Layne, 301 N.E.2d at 678.

In Sorrentino, Cunningham argued that a restrictive covenant prohibiting the sale of alcohol in Irvington, a community on Indianapolis' east side, should no longer be enforced because of changes in conditions. Specifically, he argued that much of the neighborhood had developed into a commercial center, several taverns operated from premises adjacent to the restricted area, and the area had been annexed into Indianapolis since the restrictions were

8

imposed. This Court, however, enforced the restriction against alcohol because it was for the benefit of all lot owners in the area, and other lot owners were still in a position to benefit from it. Sorrentino, 39 N.E.2d at 478; see also Brendonwood Common v. Franklin, 403 N.E.2d 1136, 1140 (Ind. Ct. App. 1980) (holding that a change in conditions was not so radical as to defeat the original purpose of the covenants).

Here, as in Bob Layne and Sorrentino, the covenant regarding the payment of dues and assessments is for the benefit of all property owners in the area, and the property owners are still in a position to benefit from these payments. For example, dues and assessments are used to pay essentials to the community, such as payments on the $950,000 improvement loan, repairs to a dam, insurance, and limited road maintenance. We agree with the HOA that the "lack of recreational facilities is not the type of 'radical change' . . . that would justify the abrogation of a private contractual property covenant." Appellant's Reply Brief at 1. Further, the HOA Bylaws clearly state that the dues and assessments on the communal property are due irrespective of whether the privilege of using the property is exercised. Thus, we conclude that the trial court erred in abrogating Meador's obligation to pay dues and assessments.

We recognize that the HOA's financial mismanagement and a change in the demographics of the Community have led to a revenue shortfall and an inability to maintain the Community's amenities, and we appreciate the trial court's attempt to provide relief following these untenable circumstances. However, the relief provided is not one afforded under Indiana law, and thus we cannot affirm the judgment. The abrogation of Meador's

9

obligation to pay dues and assessments is not a remedy for these problems, but there are potential alternatives that Meador and the HOA can investigate.[3]

**Conclusion**

Because the evidence does not support the trial court's conclusion that the changes in the Community were so radical that the original purpose of the Community and the deed restrictions were destroyed, the trial court erred in abrogating Meador's obligation to pay dues and assessments.

Reversed.

RILEY, J., concurs.

CRONE, J., dissents with separate opinion.

---

[3] See Ind. Code § 32-30-5-1 et seq., (Receivership); Ind. Code § 36-4-3-1 et seq., (Annexation); and 11 U.S.C. § 1 et seq., (Bankruptcy). We also note that other states have used blanket receivership orders, which are designed to assist communities where investor owners collect rent with no intention of ever paying the association. See Donna DiMaggio Berger, Can a Blanket Receivership Order Comfort Your Struggling Community?, Condo and HOA Law (Sept. 29, 2009), http://www.condoandhoalawblog.com/2009/09/can-blanket-receivership-order-comfort-html .

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CSL COMMUNITY ASSOCIATION, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 40A01-1112-MI-579 |
| | ) | |
| CLARENCE RAY MEADOR, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**CRONE, Judge, dissenting**

The majority acknowledges that "public policy requires the invalidation of restrictive covenants when there have been changes in the character of the subject land that are 'so radical as practically to destroy the essential objects and purposes of the agreement.'" Slip op. at 7-8 (quoting *Cunningham*, 182 Ind. App. at 516, 395 N.E.2d at 855). In my view, the relevant facts found by the trial court and recited by the majority constitute overwhelming proof that changes have occurred in the Community over the past decade or so that are far more radical than a mere "'lack of recreational facilities.'" *Id*. at 9 (quoting Appellant's

11

Reply Br. at 1). Real-estate speculators have turned what once was a well-appointed, well-financed, well-maintained, and well-patrolled retirement and recreational community into an economically and infrastructurally devastated eyesore. As such, I believe that the trial court did not err in abrogating Meador's obligation to pay dues and assessments under the Covenants. That said, because a lot owner's ability to vote is contingent upon his payment of assessments, I would reverse the trial court's ruling that Meador may retain his voting rights.