Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 25 2014, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STANTON**
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**PETER S. FRENCH**
**LEEANN P. SIMPKINS**
Benesch, Friedlander Coplan &
  Aronoff, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| VERNON ROBINSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 52A02-1306-PL-528 |
| | ) | |
| ESTATES AT EAGLE'S POINTE, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable George A. Hopkins, Special Judge
Cause No. 52D01-1203-PL-83

**March 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Vernon Robinson appeals the trial court's order that he pay $57,375 to the Estates at Eagle's Pointe (the "Estates") following his failure to pay certain fees established by the homeowner's association (the "HOA"). Robinson raises four issues which we consolidate and restate as whether the court erred in entering its order. The Estates requests appellate attorney fees pursuant to Ind. Appellate Rule 66(E). We affirm in part, reverse in part, and remand. We also deny the Estates' request for appellate attorney fees.

FACTS AND PROCEDURAL HISTORY

The Estates is a group of homes located near Peru, Indiana. The Declaration of Covenants, Conditions and Restrictions of the Estates (the "Declaration") was adopted in 1996 and provided for the creation of the HOA. The HOA manages the more than 1,100 units at the Estates.

In 2002 or 2003, Robinson began looking at homes in Eagle's Pointe, and he eventually acquired twenty-eight to thirty properties. At the time he bought property in 2006, the HOA fee was thirty-five dollars per month.

At some point, the HOA fee was increased to forty dollars per month. In December 2008, the board of directors met to vote upon an increase in the HOA fees. That same month, a letter was sent from Gloria Preece, the HOA representative, to homeowners at the Estates. The letter states that the association fees for 2009 increased to fifty dollars per month and indicated that the increase was due to rising costs associated with "trash service, lawn care and an overall effort to improve the quality of services provided" by the HOA. Plaintiff's Exhibit 4. The letter mentioned an increase

in bad debt and attorney costs associated with the collections and enforcement of the rules and regulations. The letter also referenced the 2009 association budget which included gym repairs, "Capital/Special Projects," and "Maintenance and Cleaning." Id.

In a letter dated April 8, 2010, the HOA informed the residents that the HOA dues were fifty dollars per month, were due on the first of the month, and that on the sixth of the month a late fee of twenty-five dollars per month would be assessed. That same month, the board of the HOA approved and adopted any prior action performed by the manager or board in connection with the performance of the duties of the HOA.

Before June 2010, Preece had contact with Robinson numerous times regarding his failure to pay HOA fees, and Robinson responded that he had built the HOA fees into his leases and that his renters were responsible to pay those fees.

On June 22, 2010, the Estates filed a notice of claim against Robinson in the sum of $2,175 for non-payment of HOA dues/fees in the small claims docket of the Miami Superior Court. On November 24, 2010, Robinson filed a Complaint / Counterclaim and Affirmative Defense of Set-off. He alleged that the Estates wrongfully charged him HOA fees in violation of the HOA bylaws and that the Estates owed him $1,500 in HOA dues/fees wrongfully charged and paid by him.

On January 26, 2011, the Estates filed a notice of claim under the same cause number asking for a judgment against Robinson in the amount of $6,019 for non-payment of HOA fees for twenty-four homes. On September 30, 2011, Robinson filed a Motion to Transfer Small Claim to Civil Docket and a Motion to Amend Counter-Claim. Robinson alleged in his Second Amended Complaint / Counterclaim that the HOA breached the

3

Declaration, wrongfully charged HOA fees in violation of the Declaration, and owed him in excess of $20,000 in HOA fees wrongfully charged and paid by him. Also, in September 2011, the board met to review the revenues and expenses of the HOA and decided to fix the fee to charge the homeowners at the existing rate of fifty dollars per month. On March 7, 2012, the court granted Robinson's Motion to Amend Counter-Claim.

On April 9 and 10, 2013, the court held a bench trial. At trial, Robinson testified that he had not paid any HOA fees since the lawsuit was filed, and that the property had "deteriorated to the fact that it's unacceptable."[1] Transcript at 168. He also testified that he knew there was a fee associated with the properties when he bought them, understood that the historical rate charged for the HOA fee was thirty-five dollars, and understood that the HOA fee increased to forty dollars and then fifty dollars. Mordechai Arie Gluck, one of the board members of the HOA, testified that the HOA was requesting a judgment of $46,375 and that this reflected the amount owed but not paid during the period of October 2011 to April 2013 and included $11,000 of prior balances owed by Robinson. The court admitted Plaintiff's Exhibit 8 which contained a summary of fees owed by Robinson and reflected a balance as of September 20, 2011 in the amount of $11,250 and a total balance of $46,375, which included the $11,250. David Douglas, a resident at the Estates, testified that he served on the board of the HOA and that the board met and reviewed the HOA rate. Michael Ratican testified that he served on the board of directors of the HOA for a period of time and attended a meeting at which the board made a

---

[1] Robinson makes no argument on appeal that the HOA breached the Declaration by failing to fulfill its duties with respect to maintenance of the property.

4

decision to fix the HOA fee at fifty dollars per month. Preece testified regarding the December 2008 letter, the condition of the property, and Robinson's failure to pay the HOA fees.

On May 20, 2013, the court entered an order awarding the Estates a judgment of $57,375 along with attorney's fees in the amount of $25,000 and costs. The court's order states in part:

2.   [Robinson] owns twenty eight (28) properties in the Estates . . . . See Plaintiff's Exhibit 7. [Robinson] is selling eight (8) of the properties on contract.

3.   Rules pertaining to properties at [the Estates] are set out in a Declaration of Covenants, Conditions and Restrictions (the [Declaration]).

The business of the [Estates] is managed by a Board of Directors. The current board assumed office in September 2011.

Article VII of the declaration allows the board to fix assessments on each property. Any assessment is a personal obligation of an owner of a lot at the time when the assessment becomes due and payable. When an owner constitutes more than one person, the liability of such persons shall be joint and several.

The board of directors has the right, power and authority to fix a regular assessment without any vote of the members of the association.

After January 1, 1999 a regular assessment may be increased by not more than fifteen (15%) above the regular assessment for the previous calendar year. The board of directors may fix a regular assessment above fifteen (15%) for any calendar year in which a swimming pool or pools, a tennis court or courts, or a recreation center or centers, or any combination thereof . . . [becomes available for use by Owners] in order to provide for the operation, maintenance or repair of such facilities.

Article VII Section 7.2 sets forth the purpose of regular and special assessments.

5

4.     When [Robinson] started buying properties, the regular assessment was $35.00. By 2006 the regular assessment had increased to $40.00. The increase from $35.00 to $40.00 was less than 15%.

5.     In 2008 the then board of directors decided to increase the regular assessment to $50.00. (The increase exceeds 15%.) By letter dated December 12, 2008, each property owner was informed of the increase. Attached to each letter was a copy of the budget for 2009. See Plaintiff's Exhibit 4. [Robinson] did not offer any credible evidence to prove that he was not aware of the increase. The court finds that the [Estates] had adequate cause to increase the regular assessment.

6.     [Robinson] asserts that from time to time there was no board of directors in existence. [Robinson] did not present any credible evidence to support his assertion.

7.     [Robinson] asserts that he has not been allowed to examine any corporate records. In this assertion he is correct. The [Estates] can not produce a complete set of records. During different changes in the managers retained by the [Estates], records have disappeared. [Robinson] has failed to show how he has been harmed by the loss of the records.

8.     On April 27, 2010 the then board of directors authorized, approved, ratified, confirmed and adopted all previous actions of the former managers hired by the [Estates].

9.     [Robinson] asserts that the [Estates] improperly spent funds of the home owner's association. The court finds that the issue arose because of accounting errors made by previous managers. The errors have been identified and corrected. The court cannot find any misuse of funds.

10.    Failure to pay an assessment carries a late fee of $25.00 per assessment.

11.    [Robinson] has failed to pay the assessments for many years, [h]is failures would amount to tens of thousands of dollars. The [Estates] seeks to recover only the assessments and late fees since October 1, 2011 and "$11,000 to $12,000" of the past balance. (See testimony of Mr. Gluck.) The declaration allows for the recovery of attorney's fees.

6

12. Court enters judgment for the [Estates] and against [Robinson] in the amount of $57,375.00 along with attorney's fees in the amount of $25,000.00 and costs.

Appellant's Appendix at 30-32.

## STANDARD OF REVIEW

The trial court issued findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1067 (Ind. 2006). When special findings of fact and conclusions of law are made in accordance with Indiana Trial Rule 52, this Court must determine whether the evidence supports the findings and whether the findings support the judgment. CSL Cmty. Ass'n, Inc. v. Meador, 973 N.E.2d 597, 600 (Ind. Ct. App. 2012), trans. denied. Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and conclusions which rely upon those findings. Id. In establishing whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. Id. We cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. Id. While we defer substantially to findings of fact, we do not do so for conclusions of law. Id. We evaluate conclusions of law *de novo* and owe no deference to a trial court's determination of such questions. Id.

7

To the extent that Robinson alleged in his counterclaim that the HOA breached the Declaration, we observe that Robinson had the burden of proof. See Indiana-American Water Co., Inc. v. Town of Seelyville, 698 N.E.2d 1255, 1258 (Ind. Ct. App. 1998) ("The party asserting a breach of contract bears the burden of proof."). When a trial court rules against the party with the burden of proof, "it enters a negative judgment that we may not reverse for insufficient evidence unless 'the evidence is without conflict and leads to but one conclusion, but the court reached a different conclusion.'" Heartland Crossing Found., Inc. v. Dotlich, 976 N.E.2d 760, 762 (Ind. Ct. App. 2012) (quoting Eppl v. DiGiacomo, 946 N.E.2d 646, 649 (Ind. Ct. App. 2011)).

## DISCUSSION

The issue is whether the court erred in entering its order. Robinson concedes that he does not assert that he does not owe any HOA fees. Rather, he argues that the trial court erred: (A) in calculating the HOA fees owed; (B) by determining that the HOA did not breach the Declaration; and (C) by failing to find that the late fees imposed by the HOA constituted an unenforceable penalty. The Estates argue that Robinson waived his arguments for failing to include the applicable standard of review and develop cogent arguments. To the extent that Robinson develops cogent arguments, we will address those issues.

## A.    Amount of HOA Fees

Robinson argues that the court miscalculated when it added the past due balance to the $46,375 because the evidence was that it was already included in the $46,375. In the argument section of his brief addressing this issue, Robinson does not cite to the record or

authority.  See Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.").  However, Robinson points to portions of the record in the statement of facts section of his brief to support the idea that $11,250 was included in the $46,375.

The Estates notes that Gluck testified that Robinson owed the HOA at least $46,375 and that based upon Robinson's own testimony he owed the HOA approximately $4,950 in unpaid assessments for 2009 and approximately $9,000 in unpaid assessments for 2010, not including late fees.  The Estates contend that the trial court's calculation of damages not only conformed to the evidence but was mathematically conservative.  The Estates also assert that "assuming *arguendo* that the trial court erred in the calculation of damages, any error would be harmless, as the HOA was entitled to receive pre-judgment interest."  Appellee's Brief at 25 (citing Section 7.6 of the Declaration).  Lastly, the Estates state that "to the extent the trial court made a calculation error in its judgment – which the HOA disputes –, resolution of this one issue does not require reversal of a judgment on the merits."  Id.

During trial, the Estates' attorney stated: "The suit was filed, I believe, in June, 2010, Your Honor, but we are, we are only seeking to recover today fees that are past due beginning October, 2011, through today and that's the 46,375."  Transcript at 48.  During direct examination, Gluck answered that the total amount owed but not paid during the period of October 2011 to April 2013 was $46,375.  The following exchange occurred during the cross-examination of Gluck:

9

Q    So your testimony is that the 46,000 plus or minus dollars that you're trying to collect from Mr. Robinson, that is for only an amount after September of 2011, or does that include the 11,000, plus or minus, prior to September of 2011?

A    It includes all amounts outstanding as of today, which include amounts that we've tallied and we've accounted for on a monthly basis, on a daily basis, since September 19th, 2011, plus the then outstanding 11,000 plus or minus dollars that were outstanding on the corporate books of the HOA and as discussed with the outgoing HOA management, Buckingham.

Q    So that's included then?

A    The 46,000, yes.

Q    Includes the 11,000?

A    Yes.

Id. at 74-75. Plaintiff's Exhibit 8 contains a summary of fees owed by Robinson and it also appears that the total balance of $46,375 includes the previously unpaid balance of $11,250. Gluck testified that the exhibit displayed the total amount of fees and late fees that the Estates was seeking.

To the extent that the Estates cite Section 7.6 of the Declaration, we observe that Section 7.6 states that "[t]he Board of Directors may provide for reasonable interest and late charges on past due assessments." Plaintiff's Exhibit 1A. However, the Estates do not point to any evidence or develop the argument that the Board provided for reasonable interest. We cannot say that the trial court's addition of $11,000 to the $46,375 was proper on this basis. Based upon the record, we conclude that the trial court erred in awarding the Estates $57,375.

10

B.    Breach of Declaration by the HOA

We note that the Articles of Incorporation and Bylaws of a non-profit corporation constitute a contract between the corporation and its members and among the members themselves.  Lynn v. Windridge Co-Owners Ass'n, Inc., 743 N.E.2d 305, 313 (Ind. Ct. App. 2001), reh'g denied, trans. denied.  A party who fails to make payments as required by a contract is guilty of a breach thereof.  Henthorne v. Legacy Healthcare, Inc., 764 N.E.2d 751, 758 (Ind. Ct. App. 2002).

Section 7.3 of the Declaration states:

Regular Assessments.  The Board of Directors shall have the right, power and authority, without any vote of the members of the Association, to fix, from time to time, the Regular Assessment against each Lot at any amount not in excess of the maximum Regular Assessment hereinafter provided:

(i)    Until January 1, 1999, the maximum Regular Assessment for a calendar year on any Lot shall not exceed One Thousand Two Hundred and 00/100 Dollars ($1,200.00), except as provided in the following paragraph (iv).

(ii)   From and after January 1, 1999, the maximum Regular Assessment on a Lot for any calendar year may be increased by not more than fifteen percent (15%) above the Regular Assessment for the previous calendar year, except as provided in the following subparagraphs (iii) and (iv).

(iii)  From and after the Applicable Date, the Board of Directors may fix the Regular Assessment at an amount in excess of the maximum amount specified in subparagraph (ii) above with the approval of a majority of the votes cast, in person or by proxy, by all of the members of the Association, voting as a single voting group, present at a meeting at which a quorum is present.

(iv) The Board of Directors may fix the Regular Assessment at an amount in excess of the maximum specified in subparagraphs (i) and (ii) above for any calendar year in which a swimming pool or pools, a tennis court or courts or a recreation center or centers, or any combination thereof, that have been installed or constructed by the Declarant in or on any Common Area(s) becomes available for use by Owners in order to provide for the operation, maintenance and repair of such facilities.

Plaintiff's Exhibit 1A at 18-19.

Robinson argues that the HOA breached the Declaration by failing to comply with the requirements of Section 7.3. Specifically, he contends that the HOA failed to meet to increase/fix HOA assessments, failed to provide homeowners with notice of meetings at which HOA assessments would be increased/fixed, and failed to fix the regular assessment after 2006. He maintains that there was no evidence that the increase from forty dollars to fifty dollars was approved. He also asserts that the increase in the monthly assessment from forty dollars to fifty dollars violated Section 7.3(ii) because the increase was more than fifteen percent of the previous calendar year's assessment and that the requirements under Section 7.3(iii), which allows an increase in excess of fifteen percent, were not met. In other words, Robinson's position is that he should be responsible for HOA fees of only thirty-five dollars per unit per month which was the assessment when he first began purchasing properties. He also argues that "[i]t would further be inappropriate to award . . . attorney fees because the assessment figure was improperly raised and the Plaintiff/Counter-Defendant attempted to collect such fees in violation of Section 7 of the Declaration." Appellant's Brief at 13.

The Estates contend that the exceptions in Section 7.3(iv) apply, that the evidence was overwhelming that Section 7.3(iv) was properly invoked in fixing the amount of assessments by the board, and that Robinson does not explain or address why Section 7.3(iv) does not apply. The Estates also contend that there is no requirement for the board to meet or provide written documentation to fix or increase assessments.

To the extent that Robinson argues that there was no evidence of a price increase from thirty-five dollars to forty dollars and from forty dollars to fifty dollars or that the board met and approved the price increases, we disagree. We note that Robinson testified that he understood the HOA fee to be thirty-five dollars in 2006, that the fee increased to forty dollars in 2007, and that the fee increased to fifty dollars in 2009. The record also reveals that Gluck testified that his understanding was that the fees were raised from thirty-five dollars to forty dollars and then to fifty dollars under Section 7.3(iv) and that notice was provided to homeowners each time the fee was fixed by the HOA. Preece testified that the board of directors met to vote upon an increase in the HOA fees in about December 2008 and that it was her opinion that fifty dollars per month per unit was a necessary fee to maintain the services and amenities that had been provided. Michael Ratican testified that he served on the board of directors of the HOA for a period of time and that the board met and made a decision to fix the HOA fee at fifty dollars per month.

With respect to Robinson's argument that Section 7.3(ii) was violated and that Section 7.3(iii) only allowed an increase less than fifteen percent, we observe that Section 7.3(ii) states: "From and after January 1, 1999, the maximum Regular Assessment on a Lot for any calendar year may be increased by not more than fifteen percent (15%) above

13

the Regular Assessment for the previous calendar year, *except as provided in the following subparagraphs (iii) and (iv).*" Plaintiff's Exhibit 1A at 19 (emphasis added). Thus, we turn our attention to Sections 7.3(iii) and (iv). Section 7.3(iii), which Robinson relies upon, states:

> *From and after the Applicable Date*, the Board of Directors may fix the Regular Assessment at an amount in excess of the maximum amount specified in subparagraph (ii) above with the approval of a majority of the votes cast, in person or by proxy, by all of the members of the Association, voting as a single voting group, present at a meeting at which a quorum is present.

Id. The Declaration defines the "Applicable Date" as the "date determined pursuant to Section 4.3 of this Declaration." Id. at 2. Section 4.3 states:

> As used herein, the term "Applicable Date" shall mean the date which is the earlier of (a) the date on which the written resignation of Declarant as a Class B member is delivered to the Secretary of the Association, (b) December 31, 2035, or (c) the first date on which the total votes outstanding in the Class A membership is equal to or more than the total votes outstanding in the Class B membership. Where more than one person or entity constitutes the Owner of a particular Lot, all such persons or entities shall be members of the Association, but the vote in respect of such Lot shall be exercised as the persons or entities holding an interest in such Lot determine among themselves, but in no event shall more than one (1) vote (in the case of Class A membership), be cast with respect to such Lot.

Id. at 11-12. Gluck testified that Section 7.3(iii) was not relevant because the Applicable Date had not yet occurred. Moreover, Robinson makes no argument that either subsections (a) or (c) mentioned in Section 4.3 applies and the date mentioned in subsection (b) has not occurred yet. Consequently, we cannot say that Section 7.3(iii) is applicable.

Section 7.3(iv) states:

14

> The Board of Directors may fix the Regular Assessment at an amount in excess of the maximum specified in subparagraphs (i) and (ii) above for any calendar year in which a swimming pool or pools, a tennis court or courts or a recreation center or centers, or any combination thereof, that have been installed or constructed by the Declarant in or on any Common Area(s) becomes available for use by Owners in order to provide for the operation, maintenance and repair of such facilities.

Id. at 19. Gluck testified that he understood that the HOA increased the rates from thirty-five dollars to forty dollars and then to fifty dollars under Section 7.3(iv) and that the requirements of Section 7.3(iv) were undoubtedly met. Preece testified that the December 2008 letter regarding the fee increase was written because there were many capital improvements that needed to be done including improvements to the swimming pool and fitness center. Based upon the record, we cannot say that the trial court erred in finding that Section 7.3(iv) applied, and we cannot say that Section 7.3 required notice be given that the HOA fees were increased under Section 7.3(iv). Given this conclusion, to the extent Robinson argues that the trial court erred by awarding attorney fees because the fees were improperly imposed, we determine that Robinson's argument lacks merit.

C.      Late Fees

Robinson argues that the late fees violate the Declaration because there is no evidence that the late fees were properly fixed or established, that the late fees constitute an unenforceable penalty as opposed to liquidated damages, and that a late fee of twenty-five dollars is excessive because it would punish him at the rate of fifty percent of the monthly payment. The Estates argue that Robinson failed to preserve this issue for appeal because he raises it for the first time on appeal and that, waiver notwithstanding, the late fees are not excessive and that the charges fall within the definition of liquidated

15

damages. The Estates further contend that the Declaration authorizes the board to provide for late charges and that such a late charge was adopted and ratified by the board. In his reply brief, Robinson points to a portion of the record in which he testified that he did not think that he should be responsible for late fees.

To the extent Robinson alleges that the late fees were not properly established, we observe that Section 7.6 of the Declaration states that the board of directors "may provide for reasonable interest and late charges on past due assessments." Plaintiff's Exhibit 1A at 19. Gluck testified that the board made the decision to impose a twenty-five dollar late fee. Douglas also testified that the April 2010 letter establishing the late fee of twenty-five dollars per month was sent out by management of the HOA at a point in time when he was a member of the board and that the management had his authority to send the letter. Based upon the record, we cannot say that Robinson has demonstrated that the late fee was not properly established.

We next turn to Robinson's argument that the late fee constitutes an unenforceable penalty as opposed to liquidated damages. Generally, the term "liquidated damages" "applies to a specific sum of money that has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by one party for a breach of the agreement by the other, whether it exceeds or falls short of actual damages." Time Warner Entm't Co., L.P. v. Whiteman, 802 N.E.2d 886, 893 (Ind. 2004), reh'g denied. The question whether a liquidated damages clause is valid, or whether it constitutes an unenforceable penalty, is a pure question of law for the court. Gershin v. Demming, 685 N.E.2d 1125, 1128 (Ind. Ct. App. 1997). "The distinction between a penalty provision

16

and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance." Id. "In determining whether a stipulated sum payable on a breach of contract constitutes liquidated damages or a penalty, the facts, the intention of the parties and the reasonableness of the stipulation under the circumstances of the case are all to be considered." Id. If the sum sought by a liquidated damages clause is grossly disproportionate to the loss that may result from a breach of contract, we should treat the sum as a penalty rather than liquidated damages. Rogers v. Lockard, 767 N.E.2d 982, 991 (Ind. Ct. App. 2002). "Liquidated damages provisions have value and are generally enforceable in those situations where the calculation of actual damages would be uncertain, difficult, or impossible." Id. at 990.

In Rajski v. Tezich, 514 N.E.2d 347, 348 (Ind. Ct. App. 1987), reh'g denied, trans. denied, relied upon by Robinson, the trial court ordered a garage that a homeowner had constructed in violation of subdivision restrictions removed and ordered liquidated damages in the amount of $2,930 to the date of judgment together with ten dollars per day for each day the garage remained in violation of the restrictive covenants. On appeal, the homeowners alleged that the provision for liquidated damages contained in the restrictions was a penalty and should be declared unenforceable. 514 N.E.2d at 349. The court concluded that three undisputed facts combined to lead to the conclusion that a penalty was intended by the provision. Id. First, the provision was not the result of direct negotiations between the homeowners and the proprietors of the plat or the other lot owners. Id. Thus, there was missing an inference of mutual personal intent in creating

17

the provision that true liquidated damages were intended.  Id.  Second, and "very significantly," the covenant imposed the penalty of ten dollars per day up to and including the total value of the real estate and improvements for *any* violation of the restrictions, whether serious or trivial.  Id.  Third, the damages in question were not payable to the property owners in the subdivision but were to be paid to the homeowners association.  Id.  The court held that such a provision is at odds with the notion of providing compensation to interested parties for actual injuries.  Id.

In Gaddis v. Stardust Hills Owners Ass'n. Inc., 804 N.E.2d 231, 233 (Ind. Ct. App. 2004), according to the bylaws of the Stardust Hills Owner's Association, Inc. ("Association"), every homeowner in the subdivision was required to be a member of the Association and pay annual dues of $200 for the maintenance of common areas and other community services.  There was a ten-day grace period for payment, after which the amount of the unpaid annual obligation incurred a delinquent fee at a rate of two dollars per day.  804 N.E.2d at 233.  On appeal, Phyllis Gaddis argued that the delinquent fee charged for late payment of her membership dues constituted usurious interest, and, in the alternative, that the delinquent fee was an unenforceable penalty.  Id.  The court held that the delinquent fee charged did not constitute usurious interest under the circumstances.  Id. at 236.  Specifically, the court observed that the late payment and its consequential effects may interrupt the ability of the Association to pay for the maintenance of the common area and to provide other community services.  Id.  The court also observed that the total of the late fees may seem high, but the accumulation of

18

the late fees only occurred because Gaddis breached two contractual obligations to pay her annual dues.  Id.

With respect to whether the delinquent fee constituted an unenforceable penalty, the court held:

> The provision at issue here, which provides for a flat rate of two dollars per day when the annual dues are not paid on time, regardless of proof of damages, clearly fits within the definition of liquidated damages. Gaddis asserts, without citation to any authority, that the Association's actual loss from the late payment can be gauged by what interest rate it might receive by placing the money in an interest-bearing account.  She therefore contends that the fee of two dollars per day is "so obviously disproportionate to this amount, the failure of the court to declare it a penalty was a blatantly obvious error."  Appellant's Br. p. 18.  However, as we observed above, the costs of enforcing the payment of the annual dues can be high and are directly related to the two dollar per day fee.  Thus, the sum sought by this liquidated damages clause is not grossly disproportionate to the loss that may result from a breach of contract.

Id. at 236-237.

In the December 2008 letter, the HOA informed residents that the HOA had experienced an increase in bad debt and attorney costs associated with the collections and the enforcement of the rules and regulations.  In the April 2010 letter, the HOA informed the residents that the HOA dues were due on the first of the month and that on the sixth of the month a late fee of twenty-five dollars per month would be assessed.  This late fee amounts to less than one dollar a day when divided over the course of a month and much less than the fee of ten dollars per day in Rajski which was imposed for any violation no matter how trivial.  The fee is also less than the late fee of two dollars per day which was upheld in Gaddis.  Preece testified that the rate increase from forty dollars to fifty dollars was due to the need for capital improvements that had not been done for "many, many

19

years." Transcript at 94. Specifically, Preece testified that most pressing was the swimming pool because the pool pump was "completely out and the pool was non-operational from the year before" and the "fitness center equipment was very old" and had been "home gym type equipment" instead of professional equipment, and the "entrance lighting was bad." Id. at 94-95. Preece also testified that the property needed "overall repair" and it "just needed a lot of, a lot of work." Id. at 95. Thus, the HOA fees were important to benefit the homeowners at the Estates. We conclude that this case is similar to Gaddis and affirm the trial court's award of late fees.

We next turn to the Estates' request for appellate attorney fees. Appellate Rule 66(E) provides in part that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorneys' fees under Ind. Appellate Rule 66(E) is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Thacker v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003) (citing Orr v. Turco Mfg. Co. Inc., 512 N.E.2d 151, 152 (Ind. 1987)). In addition, while Ind. Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. Id. (citing Tioga Pines Living Ctr., Inc. v. Ind. Family & Soc. Serv. Admin., 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), affirmed on reh'g, trans. denied). A strong showing is required to justify an award of appellate damages and

the sanction is not imposed to punish mere lack of merit but something more egregious. Harness v. Schmitt, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010).

Indiana appellate courts have classified claims for appellate attorneys' fees into substantive and procedural bad faith claims. Thacker, 797 N.E.2d at 346 (citing Boczar v. Meridian St. Found., 749 N.E.2d 87, 95 (Ind. Ct. App. 2001)). To prevail on a substantive bad faith claim, the party must show that "the appellant's contentions and arguments are utterly devoid of all plausibility." Id. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Id. at 346-347.

The Estates argues that in his briefing, Robinson failed to include a table of contents or table of authorities, support his arguments with cogent reasoning and citations to authorities, state the standard of review for each issue, and provide a copy of the judgment in the brief. The Estates contends that Robinson "flippantly moves from issue to issue making frivolous assertions" and misstates the record. Appellee's Brief at 13.

To the extent the Estates argues substantive bad faith, we find Robinson's argument that the trial court erred by awarding $57,375 meritorious and while we find Robinson's other arguments to be unpersuasive we cannot say that they are utterly devoid of all plausibility. With respect to the Estates' procedural bad faith claim, we acknowledge that Robinson's brief violated some of our Appellate Rules,[2] but contrary to

---

[2] For example, Robinson did not include a concise statement of the applicable standard of review and failed to cite to the record for certain statements. See Ind. Appellate Rule 46(A)(8)(a)-(b).

the Estates' argument, Robinson's briefs contain a copy of the judgment as well as a table of contents and table of authorities.[3] We cannot say that he flagrantly disregarded the form and content requirements of the rules and filed a brief written in a manner calculated to require the maximum expenditure of time. Consequently, we deny the Estates' request for appellate attorney fees.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order to the extent that it awarded the Estates $57,375, affirm the remainder of the court's order, and remand for entry of a judgment in favor of the Estates in the amount of $46,375 plus attorney's fees of $25,000 and costs.

Affirmed in part, reversed in part, and remanded.

ROBB, J., and BARNES, J., concur.

---

[3] We observe that one of the copies of Robinson's briefs submitted to the court contained the table of contents and table of authorities at the end of the brief. See Ind. Appellate Rule 46(A) ("The appellant's brief shall contain the following sections under separate headings and in the following order: (1) Table of Contents. . . . (2) Table of Authorities. . . . .").  The other copies of Robinson's brief complied with the order requirement of Rule 46(A).