# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 13 2020, 10:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
| --- | --- |
| Michael Ghosh | Ryan C. Munden |
| Carmel, Indiana | Lafayette, Indiana |

IN THE

# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Saurabh Bagchi and Somali Chaterji, | March 13, 2020 |
| *Appellants-Defendants,* | Court of Appeals Case No. 19A-PL-2070 |
| v. | Appeal from the Tippecanoe Circuit Court |
| Amberleigh Village Homeowners Association, Inc., | The Honorable Sean M. Persin, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 79C01-1801-PL-18 |

**Altice, Judge.**

## Case Summary

[1] Saurabh Bagchi and Somali Chaterji (collectively, Property Owners) appeal the trial court's judgment in favor of the Amberleigh Village Homeowners Association, Inc. (the HOA), ordering Property Owners to modify the fence

they constructed around their front and back yards to comply with restrictive covenants of the subdivision in which they live. On appeal, Property Owners present two issues for our review, which we restate as:

> 1. Did the trial court err when it determined that the HOA rejected the Property Owners' proposed plan for installation of a fence around their front and back yards?

> 2. Did the trial court err in concluding that the HOA, which waited over three years to provide the Property Owners with notice of the non-compliance of their fence with the restrictive covenants, did not acquiesce in the existence of the non-complying fence?

We affirm.

## Facts & Procedural History

Property Owners own one parcel in the Amberleigh Village subdivision in West Lafayette, Indiana. All parcels of land within Amberleigh Village are governed by the Amended Declaration of Covenants, Conditions and Restrictions of Amberleigh Village (the Covenants). The Covenants provide, in relevant part, as follows:

> *Section 6.2 Architectural Control*. **No** building, outbuilding, mailbox, **fence**, satellite dish, wall or other structure, except original construction of Dwelling Units by or on behalf of the Declarant, **shall be commenced, erected or maintained upon the Property**, nor shall any exterior addition to or change or alteration therein, other than by the Declarant, be made **until the plans and specifications showing the nature, kind, shape, height, materials, color and location of the same shall have**

**been submitted to and approved in writing** as to harmony of external design and location in relation to surrounding structures and topography by the Declarant until the end of the Development Period, the Board of Directors may appoint three (3) or more representatives to an Architectural Committee. Any change in the appearance or color of any part of the exterior of a residence shall be deemed a change thereto and shall require the approval therefore as above provided. **In the event that written approval is not received as required hereunder within thirty (30) days after complete plans and specifications have been submitted, approval will not be required and this Section will be deemed to be fully complied with**.

*Section 6.3 Fences*. All fences will be similar in design to that attached as <u>Exhibit B</u>, except privacy fences, walls, or screening constructed directly adjacent to the dwellings [sic] rear patio, in which case they shall be no greater than 6 feet in height. The Architectural Committee shall review such request pursuant to the standards and procedures set forth in Section 6.2. The Owner shall maintain all fences in top quality condition, including replacement of damaged or rotten fence posts or panels. The [HOA] may enforce this provision by requiring either appropriate maintenance by the Owner or removal of the fence by the Owner. All courtyard homes must use a white vinyl decorative fence (approved by the Architectural Committee) constructed directly adjacent to the dwelling's rear patio.

*Exhbits* at 17-18 (emphases added). Exhibit B to the Covenants provided the following depiction:



[4] In 2014, Property Owners contacted Steve Abston, then the president of the HOA, and informally inquired about installation of a fence around their property. Abston explained the specifications for installation of fences and advised Property Owners of the procedure for obtaining approval by the HOA. Abston also provided them with direct links to the Covenants and a request form for architectural approval.

[5] On or about June 2, 2014, Property Owners submitted their complete plans and specifications to the HOA outlining their intent to install an eight-foot fence

around the front and back of their property. Property Owners desired a higher fence for safety and security purposes.

[6] Abston was president and sole member of the HOA from 2014 through the summer of 2017, and during his tenure he operated "as a one man show" as there were no other board members or an architectural review committee. *Transcript Vol. 2* at 32. He thus had sole decision-making authority for the HOA to approve architectural plans submitted for review.

[7] On June 23, 2014, Abston sent an email to Property Owners acknowledging receipt of their submission and informing them that the Covenants did not permit an eight-foot fence. He also requested additional time to investigate the matter further. On July 2, 2014, the Property Owners requested an update. Abston responded on July 7, 2014, explaining that he had reached out to two individuals who confirmed that an eight-foot fence was not permitted and that he was waiting to hear back from a third individual. Property Owners agreed to wait a little longer for an answer. On July 24, 2014, Property Owners followed up with Abston. In this communication, Property Owners stated that "[a] 5ft next to the road is ridiculous" and that "[m]ost fences in other neighborhoods are taller." *Exhibits* at 55. Abston responded later that day, informing Property Owners that their proposed fence did not comply with the Covenants. He stated:

> Sorry for the delayed response again. I have asked around as
> many knowing people as possible, and there is nothing in our
> architecture regulations that would allow the 8-ft fencing. The

only "standard" that we have has been untouched since the HOA was created in 2006. Right now, the HOA consists of me. So, I am the architecture committee, as well as all other committees. . . . I would say the best route, if you would still like to try and go for something above 6 feet,[1] would be to try and get attendance to a meeting.

* * *

I wish I had better news for you, right now, but this is where we're at. Please let me know if you would like to do anything moving forward.

*Exhibits* at 55. According to Abston, his email to Property Owners was his "nice way" of saying that their fence proposal was denied, unless or until the plans were approved at an HOA meeting. *Transcript Vol. 2* at 17. Property Owners and Abston exchanged a few more emails that evening regarding a possible HOA meeting in August with such being the final exchange regarding installation of a fence on Property Owners' lot.

[8]  In August 2014, Property Owners hired a contractor to construct a wooden fence according to their original submission to the HOA except with a fence height of six feet rather than eight feet. The fence also was not "scalloped" on the top as required by the Covenants. *Appellants' Appendix* at 58. Property Owners stipulate that they did not receive approval in writing prior to erecting

---

[1] The only allowance in the Covenants for a six-foot fence was for a privacy fence, wall, or screen "directly adjacent to the dwellings [sic] rear patio." *Exhibits* at 17. Further, for "courtyard homes" in the subdivision, which includes Property Owners' home, fences must be constructed of a white, vinyl decorative fence.

the fence.  The contractor worked for approximately two weeks to construct the six-foot fence around the front and back yards of the Property Owners' lot.  The fence is pictured below.





There was no action taken by Abston on behalf of the HOA during construction of the fence or throughout his tenure as president of the HOA, nor were there any documented complaints or complaints made to Abston by other residents in the neighborhood. Abston testified that he did not know that Property Owners installed the fence. Abston's tenure as president of the HOA ended during the summer of 2017, when a new president was named.

[9] On January 26, 2018, the HOA filed a complaint against Property Owners, asserting that Property Owners violated the Covenants by installing a fence (1) without the HOA's written approval and (2) which was not in compliance with the Covenants. The relief sought by the HOA was an order from the court requiring Property Owners to remove their fence. Property Owners filed their answer and affirmative defenses on March 26, 2018. The trial court conducted a bench trial on January 29, 2019. Before the bench trial commenced, the parties filed a Joint Stipulation of Facts. On June 7, 2019, the trial court entered judgment in favor of the HOA and against the Property Owners based upon its determination that the HOA had rejected the Property Owners' fence proposal. The court directed Property Owners to submit a plan to modify their fence such that it would be acceptable to the HOA. The court further ordered that if an agreement as to an acceptable fence could not be reached, the Property Owners were required to remove the fence no later than June 7, 2020. Property Owners filed a motion to correct error, which the trial court denied. Property Owners now appeal. Additional facts will be provided as necessary.

# Discussion & Decision

[10] The trial court issued findings of fact and conclusions of law pursuant to Ind. Trial Rule 52. Under T.R. 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1067 (Ind. 2006). Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and conclusions which rely upon those findings. *CSL Cmty. Ass'n, Inc. v. Meador*, 973 N.E.2d 597, 600 (Ind. Ct. App. 2012), *trans. denied*. In establishing whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id*. We cannot reweigh the evidence or judge the credibility of any witness and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id*. While we defer substantially to findings of fact, we do not do so for conclusions of law. *Id*. We evaluate conclusions of law de novo and owe no deference to a trial court's determination of such questions. *Id*.

## 1. Rejection of Fence Proposal

[11] Property Owners argue that the evidence does not support the trial court's finding that the HOA rejected their fence proposal. Specifically, they argue that because the HOA did not, in accordance with Section 6.2 of the Covenants,

issue a written approval within thirty days after they submitted their plan, their plan was deemed approved.

[12] A restrictive covenant is an express contract between the grantor and the grantee that restrains the grantee's use of his land. *Villas West II of Willowridge Homeowners Ass'n, Inc. v. McGlothin*, 885 N.E.2d 1274, 1278 (Ind. 2008). As this court has before noted, "[o]ne purpose of restrictive covenants is to maintain or enhance the value of land 'by controlling the nature and use of lands subject to a covenant's provisions.'" *Grandview Lot Owners Ass'n, Inc. v. Harmon*, 754 N.E.2d 554, 557 (Ind. Ct. App. 2001). Although the law does not favor restrictive covenants, the contractual nature of these restrictions has led courts to enforce them in equity as long as the restrictions are unambiguous and do not violate public policy. *Hrisomalos v. Smith*, 600 N.E.2d 1363, 1366 (Ind. Ct. App. 1992).

[13] Per the parties' stipulation of facts, the court noted that Property Owners formally submitted complete plans and specifications to Abston for approval. Although they were provided with the specifications for fences as set out in the Covenants, Property Owners submitted a proposal for an eight-foot fence, with a straight, not scalloped top edge, around both their front and back yards. The proposed fence did not comply with the Covenants in any respect.

[14] On June 23, 2014, about three weeks after Property Owners submitted their plans, Abston responded that he could not find "any allowance in the regulations" for an eight-foot fence. *Exhibits* at 57. Abston asked for more time

to investigate the matter and determine whether it would be possible to accommodate their request for an eight-foot fence. Property Owners agreed to give Abston more time. After Abston spoke with at least three other people, he informed Property Owners that their fence proposal did not meet the Covenants.

[15] This evidence demonstrates that within the allotted thirty-day period for a response to their proposal, Abston notified Property Owners that an eight-foot fence was not permitted under the Covenants. Thus, rather than issuing a written approval, Abston issued a written denial of Property Owners' fence proposal. Property Owners granted Abston additional time to find a way around the restrictive covenant that prohibited their proposed fence. Ultimately, after talking with others in the neighborhood, Abston told Property Owners that there was no way around the covenant and confirmed what he originally communicated to them that an eight-foot fence was not allowed.[2] Based on the record, we conclude that the trial court did not err in finding that Property Owners proposed fence plan "was not accepted by the HOA." *Appellants' Appendix* at 13.

---

[2] To the extent Property Owners argue that the HOA did not reject their proposed placement of the fence or its design because they were only informed that the fence could not be eight feet in height, we disagree. There is nothing in the Covenants that required Abston to identify every aspect of the fence that was not in compliance therewith. Moreover, the Covenants clearly set out the specifications for fences as to placement and design and the Property Owners' proposed fence obviously did not comply with those specifications.

We also note that the fence ultimately constructed on Property Owners' lot was not the fence described in the plans that they submitted for approval. While Property Owners claimed that they had discussions with Abston about going ahead with the original plans except with a height of six feet, Abston did not remember any such conversations. To credit Property Owners' claim, we would have to judge the credibility of the witnesses, which we will not do. *See Meador*, 973 N.E.2d at 600. In any event, it remains that the plans and specifications for the fence that was erected on Property Owners' lot were never formally submitted for the HOA's approval.

## 2. *Acquiescence*

Property Owners argue that the trial court erred in not finding laches, waiver, or acquiescence by the HOA given that the HOA waited three years to confront them about their fence and nearly four years to file suit. Property Owners assert that the fact that Abston never noticed the fence following its installation "seemed rather suspect." *Appellants' Brief* at 12. Indeed, during the bench trial, the trial court questioned Abston about his claims that he did not know about the fence and that, although he lived in the neighborhood, he had not seen it in the three years since it was installed. Nevertheless, the trial court, acknowledging that it was "a close call," ultimately concluded that the HOA did not acquiesce in Property Owners' construction of the non-compliant fence. *Appellants' Appendix* at 13. To address Property Owners' argument would require that we reweigh the evidence, a task that we will not undertake upon appeal. *See Meador*, 973 N.E.2d at 600.

[18] Moreover, we note that Section 10.2 of the Covenants provides, in pertinent part:

> No delay or failure by any person to enforce any of the restrictions or to invoke any available remedy with respect to a violation or violations thereof shall under any circumstances be deemed or held to be a waiver by that person of the right to do so thereafter, or an estoppel of that person to assert any right available to him upon the occurrence, recurrence or continuation of any violation or violations of the restrictions.

*Exhibits* at 31. Nonwaiver clauses such as this are generally enforced in Indiana. *See, e.g., Johnson v. Dawson*, 856 N.E.2d 769, 774 (Ind. Ct. App. 2006). Hence, pursuant to Section 10.2, the HOA may enforce the Covenants against Property Owners despite that it has been more than four years since they erected the fence that does not comply with the Covenants. Property Owners are barred from raising the equitable defenses of laches, waiver, and acquiescence. *See id.* (holding that nonwaiver provision permitted enforcement of restrictive covenant despite prior violations by other landowners).

Judgment affirmed.

Robb, J. and Bradford, C.J., concur.